**LINDBERGH SCHOOL DISTRICT, a Public Corporation, Plaintiff-Appellant,**

v.

**Eugene SYREWICZ, Defendant-Respondent.**

**No. 35336.**

Missouri Court of Appeals,
St. Louis District.

Nov. 26, 1974.

508

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, William L. Davis, St. Louis, for defendant-respondent.

SIMEONE, Judge.

This is an appeal by the plaintiff-appellant, Lindbergh School District, from an adverse judgment of the circuit court of St. Louis County which granted compensation to the defendant-respondent, Eugene Syrewicz, for his sabbatical leave and which reinstated him as a teacher in the Lindbergh School District. We affirm in part and reverse in part.

The Lindbergh School District commenced this litigation by filing its Petition for Reimbursement alleging that the defendant Syrewicz was employed as a teacher, that he applied for a sabbatical leave for the school year 1971–1972, that the leave was granted in reliance on his representation that he would work on an advanced degree (Ph.D.) in geophysics and would attend either the University of Missouri, St. Louis University or Washington University and that the sabbatical leave payments were discontinued when it was learned that defendant had not attended any of these institutions and violated the terms of his sabbatical leave. By reason of his failure to comply with the terms of the sabbatical leave the district alleged he should be required to return his salary paid to him from September, 1971, through January 20, 1972—$2,805.95. Defendant counterclaimed for his full sabbatical year salary ($6,734.25) and sought reinstatement in the district. He had been informed that his contract as a permanent teacher had been abandoned and that he was terminated. He alleged in the counterclaim that the failure on the part of the district and the failure to provide a hearing constituted non-compliance with the Teacher Tenure Act, § 168.102–168.130, RSMo. The district admitted that the defendant was advised that he had been terminated as a permanent teacher at the beginning of the 1972–1973 school year and pleaded that he violated the terms of the sabbatical program and had abandoned his contract. Instead of attending a university during the first semester he operated or worked in a motorcycle shop and illegally accepted his

sabbatical compensation; hence this constituted a breach of the teaching contract which resulted in the termination of his tenure rights.

In due time the trial court, after a hearing, made findings of fact and conclusions of law. The court found that the defendant was a tenured teacher having been employed 14 or 15 years, that he applied for and was granted a sabbatical leave for the year 1971–1972 and was granted such leave on March 10, 1971; that although the defendant was unable to attend the universities as set forth in his application, he did attend certain institutions, one during the summer of 1971, and the others during the second semester of 1971–1972 and in the summer of 1972 for a total of 25 credit hours. Some of the courses were under graduate or field courses—eleven hours of the 25. The court found that the district's sabbatical requirement that a teacher complete 8 hours per semester during sabbatical leave was never explained by the district, that the teacher's handbook did not contain this specific requirement, and that the handbook was vague and uncertain in that it did not spell out the period of time for a sabbatical—whether a calendar or school year. The court found that the 25 hours undertaken "contributed to the improvement of the instructional ability of defendant, and that the defendant did not resign his contract and did not abandon his contract." The court therefore concluded that the defendant was covered by the provisions of the Teacher Tenure Act (§§ 168.102 and 168.130, RSMo.) and that he was not accorded his rights under that act and that the hearing before the court may "in this instance" be substituted therefor. Based therefore on the evidence, the court found that the defendant was improperly discharged and did not violate the sabbatical leave policy which subjected him to being terminated as a tenured teacher by the District.

The court therefore denied the district's claim for reimbursement of salary paid him during the sabbatical year in the amount of $2,805.95 and granted the defendant his sabbatical salary for the full academic year 1971–1972 in the amount of $6,734.25 less the amount paid ($3,928.30) plus interest and ordered his reinstatement. The district appealed the denial for reimbursement, salary granted the defendant and reinstatement.

The points preserved for review are: (1) the defendant failed to comply with the terms of the sabbatical leave [1] and (2) the defendant wilfully deviated from the sabbatical program set out in the application without first explaining, justifying or notifying the plaintiff-district of said deviation and thereby abandoned his permanent contract with the district; and (3) even were the defendant entitled to a hearing under the terms of the Teacher Tenure Act, he had a full hearing in the trial court and was thus not thereby prejudiced.

This is a court tried case. We review the case both upon the law and the evidence as in suits of an equitable nature and from all the evidence we are to reach our own independent conclusions, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. We are not to set aside the judgment unless it is clearly erroneous. Rule 73.01(d), V.A.M.R.

The evidence is uncontradicted that the defendant had been employed by the district as a teacher since 1956 or 1957 and that he had taught in the fields of science and social science. He had a Bachelor's and Masters Degree and thirty plus hours toward a Ph.D. During his 15 years he

---

1. One of the requirements was that "Any person being granted a Sabbatical Leave for study shall complete at least 24 semester units of work during a Sabbatical year, not less than 8 semester units of which shall be completed during each semester of such leave. Those courses . . . shall be approved by the Superintendent of the Lindbergh District." Rule IX of the Sabbatical Leave Program adopted by the District.

had never had any disciplinary problems and was reputed to be highly qualified in his field. Neither his integrity nor his morals had been questioned.

The defendant was a "permanent teacher" having been employed as a teacher for more than five successive years. § 168.-104(4), RSMo. This Act became effective July 1, 1970, and was in effect and controlling at all times relevant to this case. A contract between a permanent teacher and the school district is for an indefinite time, § 168.106, and continues in effect for an indefinite period subject to certain enumerated exigencies of which only two would be applicable here: (1) resignation of the teacher with the written consent of the board, and (2) termination by the board after a hearing with notice and service of written charges and a request by the teacher for a hearing. §§ 168.106, 168.116. The grounds for termination of a permanent teacher's contract are enumerated in § 168.114.

Plaintiff contends that the defendant was not "terminated" as that term is used in § 168.114 and that hence he was not entitled to the procedural due process of the Teacher Tenure Act. This contention is based on its position that the defendant, by failing to comply with the requirements of the Sabbatical Leave Program, breached and abandoned his contract and that neither of these are grounds enumerated in § 168.114 for termination.

■ Although the defendant in his application for leave on September 27, 1970, indicated that his plans were to work on an advanced (Ph.D.) degree in geophysics and try for a graduate assistantship at Washington University, St. Louis University, or the University of Missouri[2], he did not so attend but enrolled in other institutions and engaged in certain other programs commencing in the summer, 1971, and in the spring and summer, 1972. In December, 1971, the Superintendent of the

school wrote to defendant inquiring where he had been attending school and whether he was presently enrolled in graduate school. The defendant replied that he had completed graduate work at Princeton University and "would be working" on a degree at Union Graduate School at Antioch College "this semester." The superintendent in February, 1972, was informed by one of the schools (Union Graduate School) that the defendant was not so enrolled. Upon learning of this, the superintendent by letter to the defendant indicated that "It appears that you falsified the application for sabbatical leave . . . and that you breached your contract with the Lindbergh School District." The defendant was then informed that his salary payments would be stopped and was requested to return the salary paid to date (February, 1972). After some other correspondence, an attorney for the district wrote that the defendant's failure to comply with the requirements of sabbatical leave constituted a resignation from the District and that he no longer was entitled to continue as a permanent teacher in the district.

Although the district was made aware of the various courses taken by defendant at other institutions, the district stated that the courses were not in his field of specialization or were not taken during the academic year and that he did not comply with the requirement of taking 8 hours per semester and made no request for a change of his field of study for which the leave was granted. An informal meeting was planned, but not held.

Eventually, and on August 25, 1972, the district instituted action for the reimbursement of salary. Plaintiff's theory was that the defendant failed to comply with the terms of the sabbatical leave, deviated from the terms thereof and breached those terms in that he failed to complete 8 semester units during the first semester of the academic year 1971–1972, and also abandoned and breached his permanent

---

2. In his letter of application the defendant stated that if he did not receive an appointment, "I will matriculate for the Ph.D. in science education at St. Louis University."

teacher contract, so that he was not entitled to termination proceedings under the Teacher Tenure Act.[3]

It is clear that there was a sabbatical leave program at the school district, and that there were certain procedures and requirements pertaining thereto. The procedure for application required that the application "shall" include a planned program of study and/or [sic] travel and that any person being granted a sabbatical leave for study shall complete at least 24 semester units of work during a sabbatical year, not less than 8 semester units of which shall be completed during each semester of such leave. These courses "shall" be approved by the Superintendent of the Lindbergh District. It is also clear that the defendant made application for sabbatical to "work on an advanced degree (Ph.D.) in geophysics," and that he intended to attend certain local universities. While it is true that the defendant did attend certain schools and completed several courses,[4] he did not fully comply with his application for leave and never advised the district of his change in plans.

The evidence shows that he did not conform to his original application for sabbatical leave to work on an advanced degree in geophysics and did not attend the institutions he indicated he would attend. He

did not attend any institution during the first semester of the 1971–72 academic year—having worked in or operated a motorcycle shop. He did not attend any institution, except for the field course at Yellowstone Big Horn, until the second semester and this was after he received a letter from the superintendent on February 18, 1972. Then he took and completed three courses (8 hours) in education at Southern Illinois University (enrolling in April, 1972), having applied in March, 1972, and two freshman level courses at the University of Missouri at St. Louis for a total of six hours; during the summer of 1972 he completed a five semester hour undergraduate freshman course concerned with Johnsons Shut-In Park at East Central Junior College. Some of the courses were freshman level courses and it is difficult to believe that some of the courses were "work" on an advanced Ph.D. degree in geophysics. He did not receive approval from the superintendent for taking these courses in accordance with the program.

We believe that under all the evidence defendant had a duty to comply with the sabbatical leave program and especially Rule IX which required him to complete at least not less than 8 semester units in each semester and which required the courses to be approved by the superintendent, espe-

---

3. The District also espouses the novel theory that since defendant was on sabbatical leave when he breached the agreement, he was not "on the job" and therefore not entitled to the protections afforded by the Teacher Tenure Act. Two of the grounds in the statute are "immoral conduct" and conviction of a fellony. Must these occur "on the job?"

4. In the summer of 1971, before the academic year 1971–1972, from July 25—August 21, 1971, he attended and received six credit hours for the field course in physical and historical geology for secondary school teachers conducted by Princeton University and sponsored by Princeton and the National Science Foundation at Yellowstone Big Horn Research Association Field Camp at Red Lodge, Montana.

He made application on February 1, 1971, to Union Graduate School at Antioch College

in Ohio. This application was denied on February 21, 1972.

After the denial of this application and after receiving the letter from the superintendent on February 18, 1972, the defendant applied for and completed three courses (Psychological Aspects of Education, Group Counseling & Problems and Guidance) at Southern Illinois University for 4 quarter hours each totaling 12 quarter hours or eight semester hours. He enrolled in April, 1972.

He completed a five semester hour undergraduate freshman course concerned with Johnsons Shut-In Park in physical geology at E. Central Junior College, taught by a fellow teacher at Lindbergh, from June 8, 1972 to July, 1972. He received an "A".

He completed two freshman level courses (Introduction to Art & Teaching in the elementary school) at the University of Missouri at St. Louis for a total of six hours during the spring semester, 1972.

cially in view of the fact that the program was changed. The defendant was notified by letter on March 10, 1971, that his request for leave was approved and informed to "please stop by our office to review the leave provisions. . . ."

Since we believe he failed in these particulars, we believe he failed to comply with and deviated from the terms of the sabbatical program and was not entitled to recover his salary for the full sabbatical year so that the plaintiff district is entitled to judgment for the salary paid during the 1971–1972 academic year in the sum of $2,805.95.

■ But it does not follow that because the defendant failed to comply with and deviated from the sabbatical leave program and breached the terms thereof, he is not entitled to reinstatement as a permanent teacher.

We believe that upon failure to comply with the requirements of the sabbatical leave program, the district cannot unilaterally determine that such failure constitutes a resignation and an abandonment of his permanent teacher's contract without complying with the provisions of the Teacher Tenure Act of Missouri.

The district terminated the contract of a tenured teacher without complying with the provisions of the Teacher Tenure Act and unilaterally terminated that contract on the grounds that the defendant failed to comply with the terms of the sabbatical leave and deviated from the sabbatical program without explaining, justifying, or notifying the district.

Even though we believe the defendant failed to comply with the terms of the sabbatical leave program and is not entitled to compensation for his sabbatical leave, we cannot adhere to the plaintiff's position that such failure also constitutes a termination or resignation of his indefinite teacher's contract. We believe that the district did not conform to the requirements of the Teacher Tenure Act; hence for the purpose of determining whether the failure to comply with the sabbatical leave program constitutes a termination of the indefinite contract, defendant must be afforded a hearing in accordance with §§ 168.114[5] and 168.116, RSMo. It was necessary, under these circumstances for the district to proceed against the defendant under those provisions, and since the provisions of law were not complied with, the defendant is entitled to reinstatement as a permanent teacher and to compensation therefor.

■ The Teacher Tenure Act evidences a legislative intent to provide substantive and procedural safeguards with respect to tenured teachers. As we view the Act, its purpose is to establish strictly defined grounds and procedures for removing a permanent teacher which may not be evaded or other procedures substituted therefor.

Our General Assembly has declared in the Teacher Tenure Act that there be certain procedural safeguards for teachers for which a civil trial cannot be used as a substitute. Deviation from these statutory procedures are, by their very nature, prejudicial to the beneficiaries of the Act since the Act itself affords a permanent teacher all the safeguards outlined in § 168.116. Those safeguards were not provided here. Therefore, we hold the defendant-teacher is entitled to reinstatement to his position as a permanent teacher as of the academic year 1972–1973 and is entitled to compensation from that time and until such time as the district complies with the requirements of the Teacher Tenure Act.

5. "168.114. 1. An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes: . . . .

(4) Willful or persistent violation of, or failure to obey the school laws of the state or the published regulations of the board of edution of the school district employing him . . . ."

In its brief the plaintiff-district cites several decisions[6] or paragraphs of encyclopedia in support of its position that there was an abandonment and breach of contract theory. Most of these are based on general principles of contract law which are inapplicable under the provision of the Teacher Tenure Law or are distinguishable upon the facts.

The judgment of the trial court is therefore affirmed in part and reversed in part. The judgment of the trial court is affirmed on Count II of defendant's counterclaim ordering reinstatement and compensation. But the judgment is reversed and remanded with directions to enter judgment as follows:

(1) On the district's claim, judgment in favor of the district for $2,805.95 plus interest, which the defendant was paid under the sabbatical leave program;

(2) On Count I of the defendant's counterclaim for the balance due defendant during his sabbatical leave in the amount of $3,928.30 plus interest ($4,143.30), judgment in favor of the district.

DOWD, C. J., concurs.

KELLY, J., dissents in separate opinion.

KELLY, Judge (dissenting).

While I concur in the result reached in the majority opinion with respect to Count II of the defendant's counterclaim I respectfully dissent with the result reached with respect to the claim of the plaintiff and Count I of the defendant's counterclaim.

The parties agree that there was a sabbatical leave agreement. The point at issue is whether the document denominated "Sabbatical Leave Program" is a part of this agreement. The majority conclude that it is; I conclude that it is not.

Plaintiff, which instituted this litigation, sought to recover $2,805.95 paid to the defendant as sabbatical leave pay. Defendant in Count I of his counterclaim sought to recover of the plaintiff some $3,928.30, the balance he alleges was due him of his sabbatical leave pay. Plaintiff's claim is brought on the grounds that the defendant failed to comply with the requirement of Paragraph IX of the Sabbatical Leave Program in that he did not complete at least 24 semester units of work during a sabbatical year, not less than 8 semester units of which shall be completed during each semester of such leave. Defendant, for his counterclaim, alleges that he did comply with all of the sabbatical leave requirements and the plaintiff in defense alleges (1) the failure of the defendant to satisfy the same 8 semester unit requirement upon which it bases its claim for reimbursement and (2) that the defendant deviated from the sabbatical leave program set out in his application for sabbatical leave without first explaining, justifying or notifying the plaintiff of said deviation and thus abandoned his agreement and his entitlement to sabbatical leave pay. The basis for this latter defense is likewise founded upon a provision in Paragraph IX of the Sabbatical Leave Program that courses to be taken on sabbatical leave shall be approved by the Superintendent of the plaintiff school district.

Where the majority opinion errs is in its conclusion that the sabbatical leave agreement between the parties incorporated the "Sabbatical Leave Program" requisites relied upon by the plaintiff in its claim for reimbursement and in its defense against the defendant's counterclaim, Count I.

It is not for either the trial court or for this court to make a contract for the parties; we merely take the contract as it is and determine the rights and liabilities thereunder.

The evidence in this case is uncontradicted that the plaintiff gave to each of

6. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); Fluker v. Alabama State Board of Education, 441 F.2d 201 (5th Cir. 1971).

the teachers in its employ a Teacher Handbook consisting of some 41 pages of detailed explanation of the philosophy of the school district, statement of its objectives, a code of ethics, and chapters on School Organization, Board of Education, Administration, Personnel, School Procedures, Teacher Responsibilities, Policies Relating to Teachers, Professional Negotiations Agreement, and Grievance Procedure. Included in this Teacher Handbook is the following, at p. 28:

"3. Sabbatical Leave

Teachers may request a sabbatical leave after having taught in Lindbergh School District for six years. The request must be made to the Board of Education in writing. One-half the teacher's salary for the *sabbatical leave year* will be paid to the teacher during his leave. The teacher must return for *one full year* after the sabbatical leave to Lindbergh School District or refund the money paid during the leave time. Payments will follow the regular payroll schedule. Movement on the salary schedule will be made as if the staff member were on regular duty. Applications must be made by February 1. Efforts will be made to provide the teacher on sabbatical leave an identical position when he returns. If this is not possible, the teacher will be placed in a position as similar to his previous one as possible. Only two per cent of a staff at any given level (elementary, middle, high) will be permitted to be on sabbatical leave at the same time." (Emphasis supplied).

The Teacher Handbook further provides that teacher contracts are for a 10 month period and annual salaries for teachers shall be paid in 12 increments on the 20th of each month.

In reliance on this information furnished in his Teacher Handbook the defendant made application to the plaintiff on September 27, 1970, for a sabbatical leave during the 1971–1972 "school year" so that he might work on an advanced degree—Ph.

D.— in geophysics or, in the alternative, in science education. In his application the defendant stated that he was "trying for a graduate assistantship at Washington University, St. Louis University and the University of Missouri" and if for some reason he could not receive such an appointment at one of the aforesaid institutions of learning he would then "matriculate for the Ph.D. in Science Education at St. Louis University." The application clearly stated that this was a "planned" program. No action was taken by the Board on defendant's application and on February 10, 1971, the Superintendent advised the defendant, by letter, that his application had not been approved by the Board of Education at its regular meeting because the defendant had failed to comply with "all state requirements for the current school year." (The requirement referred to in this letter was the medical certificate required annually by § 168.131 RSMo 1959, V.A.M.S.). The defendant complied with this requirement and resubmitted his prior application for sabbatical leave by a letter of March 8, 1971. The Board entertained the application of the defendant and the Superintendent advised him by letter of March 10, 1971, that the Board had approved his application for sabbatical leave and requested that prior to the end of the school term the defendant stop by "our office to review the leave provisions and make necessary arrangements for salary payments, withholding and retirement."

The uncontradicted evidence is that the "Sabbatical Leave Program" (hereinafter referred to as "the Program") is a document of some several pages consisting of 9 paragraphs setting out in detail the qualifications of those eligible for sabbatical leave, the purpose of sabbatical leave, its duration, remuneration for teachers on sabbatical leave, the effect of sabbatical leave on salary and retirement, the condition of sabbatical leave contract, the procedure for application, the criteria for selection, and specific requirements for sabbatical leave for improving instruction. It is

also uncontradicted that this Program was retained by the Superintendent in his office.

For the reasons aforesaid I cannot concur in the finding of the majority that: "It is clear that there was a sabbatical leave program at the school district, and that there were certain procedures and requirements pertaining thereto" when they proceed to impose upon the defendant the requirements of the document denominated "Sabbatical Leave Program" which were not set out in the Teacher Handbook nor even referred to therein. Our difference is fundamental.

As I view this evidence, the sabbatical leave agreement between the parties consists of the application of the defendant together with the information imparted to him in the Teacher Handbook and the acceptance, unqualifiedly, of his application by the Board of Education. I would hold that the defendant was not bound by any of the requirements of the Program, including Paragraph IX, which the majority holds he breached, because he had neither actual nor constructive knowledge of these requirements.

The Superintendent testified that the Program was retained in his office. He also testified that both he and the Board of Education "assumed" that anyone applying for sabbatical leave knew of the Program and its requirements. Nevertheless, except for the Teacher Handbook, there was no evidence offered by the plaintiff in support of its position that the Program had been promulgated among the teachers of the school district, and nowhere in the Teacher Handbook is there any reference, direct or indirect, that there is such a document containing provisions for those granted sabbatical leave. There was no evidence that the Program was distributed to teachers of the district nor that it was posted in places where teachers congregate. Nor was there any evidence that the Program was discussed in teacher meetings in the district. The defendant relied on the information furnished in the Teacher Handbook and I conclude that in the absence of evidence that he had knowledge that the document setting out the requirements relied upon by the plaintiff in support of its position that he breached his sabbatical leave agreement with the plaintiff he had every right to do so.

The defendant denied any knowledge of the Program and its requirements. His explanation for not complying with the request of the Superintendent that he drop by the office and discuss the leave provisions is that he understood the leave provisions referred to in the letter of March 10, 1971, to refer to those with respect to the arrangements for salary, withholding and retirement payments while on sabbatical leave, and he did tend to those. This explanation is not incredible, particularly in the light of the circumstances and the failure of the plaintiff to make it clear that there were requirements on sabbatical leave in addition to those set out in the Teacher Handbook.

If, as the majority holds, the defendant was burdened with the Program requirements, I would hold that they were waived. Despite the fact that the defendant had not complied with the Superintendent's request to stop by the office and discuss the leave provisions, he was permitted to enter upon his sabbatical leave to his detriment. His application was granted without qualification; no copy of the Program was sent to him at any time prior to the filing of this lawsuit in August, 1972, when it was attached to the plaintiff's petition for reimbursement as an exhibit, nor was he ever directed to acquaint himself with its contents. The school term commenced in September, 1971, and the Superintendent knew that the defendant was not engaged in his teaching duties in the school district at that time. The evidence is that teachers in the district contract for a 10 month period and are paid their "annual salary" in 12 monthly increments on the 20th of each month. The Superintendent knew that the defendant was being paid one-half his annual salary while on sabbatical leave rather than his full salary. He also knew that he

had not, as the Program requires, approved the courses the defendant would take during the first semester of his sabbatical leave. He sat idly by until December 29, 1971, when he inquired by letter where the defendant was enrolled in a university or college. Even at that late date he did not mention that the defendant might be in violation of the "8 semester unit" provision of the Program. He did not even mention the Program in this letter of inquiry. When the defendant replied to this letter the Superintendent made inquiry at Princeton University and Antioch College to verify the information furnished him by the defendant. Even there the Superintendent contributed to the misinformation furnished him by Princeton University when his inquiry was limited to the defendant's attendance there during the Fall Term, 1971. The defendant had not told him that he was enrolled at Princeton during that Term. Nor did he then attempt to arrange for a conference with the defendant to determine if there was some other information he could forward to the Registrar at Princeton to aid him in verifying defendant's attendance there as the Registrar had suggested. Displaying a high degree of administrative ineptitude, the Superintendent firedoff a scurrilous missive to the defendant accusing him of misrepresentation and falsification in his application for sabbatical leave, in his report of attendance, and of accepting money under false pretenses. This letter was written on February 18, 1972, while the defendant's application for admission to the Union Graduate School at Antioch College was still pending, and by coincidence it was by letter of February 21, 1972, that the defendant was advised that the Admissions Committee of that school had met and decided to deny him entry in the graduate course which would have been in the field of his specialization as stated in his application for sabbatical leave. A mite of professional courtesy would lead me to conclude that had the Superintendent summoned the defendant to his office on February 18, 1972, for a discussion of the discrepancies in his application for sabbatical leave, the lack of verification by the two schools defendant had said he had either attended or was to attend, would have resolved these problems for all concerned and perhaps the defendant could have still carried out the purpose for which he was granted sabbatical leave.

The gist of the plaintiff's contention that the defendant breached his sabbatical leave agreement is partially dependent upon the requirement of the Program that at least 8 semester units be completed during the first semester of sabbatical leave.[1] It refuses to credit the defendant with the 6 "equivalent hours" earned at the field course jointly sponsored by Princeton University and the National Science Foundation on the grounds (1) that these hours were not acquired during the sabbatical year, which it contends, through the Superintendent, comprises the period between September, 1971, and June, 1972—the "school year"—and (2) such hours, being "equivalent hours" are not creditable for the purpose of sabbatical leave.

It is apparent that even if defendant were credited with these 6 "equivalent hours" he would not satisfy the 8 semester units per semester required by the Program. However, the weakness in the position of the plaintiff is that nowhere in either the Teacher Handbook nor in the Program is the term "sabbatical leave year" defined. In fact, Paragraph III of the Program which is concerned with the duration of the sabbatical leave states: "A Sabbatical Year Leave for improving instruction may be granted for *one year* or one semester." (Emphasis supplied). There is no evidence in this record to support a construction of the term as other than a calendar year except for that of the Superintendent. It occurs to me that in the face of the provision in the Teacher

---

1. Plaintiff, through its Superintendent, makes no issue of the fact that the defendant was not enrolled at any one of the universities mentioned in his application. The Superintendent testified that enrollment at the Union Graduate School, Antioch College, would have been satisfactory for sabbatical leave purposes.

Handbook that the annual salary received by a teacher is paid in 12 increments, that in the absence of any evidence to the contrary, we may infer that sabbatical leave pay at one-half the regular pay scale would likewise be paid over a 12 month period and the teacher ought then to have that same period of time within which to acquire the 24 hours of credit in the absence of actual or constructive knowledge to the contrary.

Nor is there anything in the Teacher Handbook or the Program which states that the "equivalent hours" awarded the defendant will not satisfy the sabbatical leave requirements. The defendant testified that he had in the past been given credit for National Science Foundation courses taken at various colleges and universities for the purpose of salary increments. The technical distinction made by the Superintendent—whether a student is enrolled in the academic program of the school awarding the credits—is not even mentioned in either the Teacher Handbook or the Program. Whether such courses are creditable would be a matter for determination by the college or university awarding the Ph.D. degree, not this plaintiff in the absence of express notification of that fact. Had the Superintendent insisted that the defendant obtain approval of his course at Red Lodge, Montana, prior to enrolling there and expending his monies therefor the plaintiff's position would have more validity. The difficulty with the plaintiff's position as I view it is that it presumed too much, permitted the defendant to expend time and money in enrolling in the course at Red Lodge, Montana, and jumped to conclusions without affording the defendant an opportunity to explain the difficulties he had experienced in attempting to carry out his planned course of study and, without affording him the due process rights guaranteed to him by the Teacher Tenure Act of this state, accused him of criminal acts and terminated his permanent teacher contract illegally.

By his letter of February 18, 1972, the Superintendent for the plaintiff unilaterally rescinded the sabbatical leave agreement between the parties and left the defendant with the customary election of remedies available in that situation.

For the reasons aforesaid I would affirm the judgment of the trial court insofar as it denies recovery to the plaintiff of the $2,805.95 paid to the defendant as and for sabbatical leave up to and including January 20, 1972.

With respect to the defendant's counterclaim, Count I, for the balance of his sabbatical leave pay I conclude that since the defendant deviated from his planned program of study approved by the Board of Education when he made application for admission to the graduate school of Southern Illinois University-Edwardsville on March 21, 1972, for courses in Education Counselling, he is not entitled to recover sabbatical leave pay from that date forward.

The record supports a finding that throughout the period between the conclusion of the 1970–1971 school year in June, 1971, and February 21, 1972, the defendant was attempting to pursue a course of study in his field of specialization and working towards a Ph.D. degree as he stated he planned to do in his application for sabbatical leave. What is of concern to both the majority and to me is that between August, 1971, when he completed the course at Red Lodge, Montana, and March 27, 1972, when he commenced attending classes again at Southern Illinois University-Edwardsville, he accepted his sabbatical pay from September to January without being enrolled in any university or college. Nevertheless, he had an application on file with the Union Graduate School of Antioch College from February 1, 1971, and so far as he knew he had until the following September, 1972, to acquire the 24 semester hours of graduate study required [2] prior to his return to the plaintiff school district in

2. Defendant testified that 24 hours was considered the normal academic year's work in graduate school. He did not obtain this knowledge from either the Teacher Handbook nor the Program; he knew it from prior experience in graduate schools.

fulfillment of the requirement set out in the Teacher Handbook that any teacher granted sabbatical leave must, upon completion, return to the district and teach there for one year. The plaintiff offered no evidence that the defendant could not have complied with the 24 semester unit requirement had it not rescinded the sabbatical leave agreement unilaterally. The defendant did present himself at his normal place of employment at the beginning of the 1972–1973 school year ready and able to resume his teaching duties but he was denied the opportunity to fulfill his obligation under the agreement and his permanent teacher contract.

For the foregoing reasons I would reverse and remand the judgment of the trial court with respect to Count I of the defendant's counterclaim with directions to hear evidence to determine the amount of sabbatical leave pay due and owing defendant between January 20, 1972, and March 20, 1972, and then enter a judgment for the defendant in that amount plus interest thereon at the rate of 6% per annum on Count I of his counterclaim.