Raymond NEVELS, Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF the SCHOOL DISTRICT OF MAPLE-WOOD–RICHMOND HEIGHTS, Defendant–Respondent.

No. 59796.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 19, 1991.

Marilyn S. Teitelbaum, St. Louis, for plaintiff-appellant.

Richard H. Ulrich, Theresa Counts Burke, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Plaintiff Raymond Nevels, a physical education teacher, appeals from the judgment of the circuit court upholding his termination as a teacher by respondent Board of Education of the School District of Maplewood–Richmond Heights ("school board"). In accordance with the provisions of sections 168.102–168.130, RSMo 1986, the Teacher Tenure Act, the school board afforded Mr. Nevels a hearing in August 1990 on charges following a warning letter to him in February 1990.[1] After the hearing, the school board terminated Mr. Nevels on grounds of inefficiency, incompetency and insubordination. We affirm.

■ Our scope of review is limited to a determination whether or not the decision of the school board is supported by competent and substantial evidence upon the record as a whole; whether the decision was arbitrary, capricious or unreasonable; or whether the administrative action constituted an abuse of discretion. *Cochran v. Board of Education of Mexico School District No. 59*, 815 S.W.2d 55, 58–59 (Mo.App. 1991).

Appellant has briefed five points, but essentially raises four issues. These issues are as follows: 1) whether substantial evidence supported the school board's findings of Nevels' incompetency, inefficiency and insubordination; 2) whether the school board complied with the "meet and confer" statutory requirement in good faith; 3) whether the school board failed to use statutorily required performance—based evaluations to determine Nevels' professional competency; and 4) whether the school

board relied on matters outside the scope of the warning and charge letters in its decision. We address each issue in turn.

At the outset Nevels claims that the school board's finding of his incompetency, inefficiency and insubordination is not supported by competent and substantial evidence; is arbitrary, capricious and unreasonable; is an abuse of discretion; and is in excess of statutory authority.

■ We must consider the evidence in the light most favorable to the school board's decision, together with all reasonable inferences where supported. *Cochran*, 815 S.W.2d at 58–59. If evidence before an administrative body would warrant either of two opposed findings, we are bound by the administrative determination and it is irrelevant that there is evidence to support a contrary finding. *Id.* at 59. We may not substitute our judgment of the evidence. *Id.* at 58–59.

Raymond Nevels received his bachelor of science degree in health, recreation, and physical education and dance in 1963. He later obtained a master's degree in physical education, recreation and dance and a second master's degree in education for adult education administration. He began his teaching career at a high school in Arkansas where he was athletic director, head of the physical education department, coach for basketball, football and track, and a biology teacher. In 1966 he began teaching physical education for kindergarten through sixth grade in the Maplewood–Richmond Heights School District. Some twenty years later, in January 1986, the school board superintendent transferred him to Valley School in the same school district to teach physical education to seventh and eighth graders.

Mark Engelhardt became principal of Valley School the following October. Apparently the personalities of principal and teacher conflicted from the outset with differing philosophies concerning a physical education program. Principal immediately

---

**1.** All statutory references are to RSMo 1986 unless otherwise noted.

directed written memos to Nevels calling attention to various problems he perceived.

The first formal evaluation of Nevels' performance by the principal occurred in February 1988, in accordance with school district guidelines recommending summative evaluations be performed at least once every three years. Nevels' last review had been in February 1985, before he had been transferred to Valley School. In the 1988 review, principal rated Nevels as meeting performance expectations in all categories; however, principal expressly noted concerns, including misuse of the pay telephone located outside Nevels' office near the gymnasium. Nevels, dissatisfied with the report, asked for a re-evaluation. Principal again observed Nevels' classroom and then prepared a second summative evaluation report in June 1988. Like the February evaluation, the June report reflected Nevels met performance expectations, but also listed several concerns, including Nevels' use of the pay telephone and his relationships with parents. Nevels refused to sign the report as acknowledgment that the information had been discussed with him.

Following the June 1988 report, the principal issued three job target sheets to Nevels, one in November 1988, and two in late February 1989. Each of these targeted areas of weakness for Nevels to concentrate on for improvement. The first job target noted Nevels' unauthorized use of the pay telephone and lack of supervision of his students. Nevels' own notes reflect that when the principal told him not to answer the phone at all, he responded that he would answer the phone every time it rang. The second target dwelt on inappropriate comments, such as calling students "fat." Nevels responded that "he always told the truth, and if a child was fat, that he, being a truthful man, would call fat, fat." The third target sheet focused on selection of appropriate subject matter and on employment of a variety of teaching techniques and activities to maximize student involvement.

Principal also observed Nevels' classroom in late February 1989 and expressed his dissatisfaction over regimented, militaristic methods Nevels utilized. Apparently, no further reports, target sheets or class observations were conducted during the remainder of the school term.

The next notice concerning Nevels' performance occurred the following school year when he received a warning letter on February 26, 1990. The warning letter itemized twenty-one incidents constituting incompetency and inefficiency and eight episodes of insubordination. This letter, in accordance with the statutory requirements of section 168.116, further warned that these complaints, if not remedied, could result in the filing of formal charges against Nevels for termination of his employment. The letter from the superintendent also notified Nevels that the superintendent, principal and Dr. Joyce Espiritu, a health and physical education coordinator from another school district, would meet with teacher to resolve the problems. The board had hired Dr. Espiritu as an outside expert to avoid conflict because of the apparent personality clash between the principal and Nevels. The day the warning letter issued, the superintendent met with Nevels to explain it to him. Shortly thereafter, the superintendent also met with Nevels and Dr. Espiritu. After this meeting, the three decided that Dr. Espiritu would observe Nevels' classroom weekly during the next thirty day period. Dr. Espiritu observed Nevels' classes on five different occasions, prepared written summaries and discussed her comments and recommendations with him.

The principal and superintendent also met with Nevels on March 1, 1990, to review the warning letter and to offer suggestions. The principal also sat in Nevels' classroom on seven different occasions and met later with him on three occasions to discuss his observations.

James Boley, a school counselor responsible for scheduling and collection of grades and grade notices, met with Nevels during the first week of April 1990 to assist him with his record keeping. Patti Johnson, the school secretary, also assisted Nevels with attendance records. Shortly after the issuance of the warning letter,

she had returned his attendance report for correction of errors noted. At the end of the school year, she gave him a copy of the attendance procedure which had been given to him at the beginning of the school year and she showed him step-by-step the procedure for completing the monthly reports correctly.

On June 6, 1990, the superintendent issued a charge letter to Nevels citing him for incompetency, inefficiency and insubordination. The specific episodes comprising incompetency and inefficiency were as follows:

Your physical education program curriculum is too remedial; is not appropriate to the abilities, needs and interests of the students; does not employ a variety of effective teaching techniques; does not provide a variety of activities; does not provide for individual differences; does not encourage or foster students' self-esteem; and promotes intimidation as evidenced by and in the following respects:

The number of activities taught are limited in number with very little outdoor activity. Since the 30 day warning letter was issued, neither Dr. Espiritu nor Dr. Engelhardt has observed any outdoor activity.

Games played within your classes, such as Simon Says are too remedial for seventh and eighth grade students and do not teach appropriate skills or appropriately prepare the students for physical education when they enter high school. You have continued to use the concept of 'Simon Says' by referring to yourself as 'Coach Simon.'

With reference to the nature and propriety of activities taught to your students, presentation of materials, including the polka and the Rochester Scottish, [sic] are more appropriately presented at the first or second grade level, and the manner in which they are presented by having the students verbally repeat elementary words, is too remedial and is not appropriate for the needs and interests of seventh and eighth grade students.

In your classroom activities, you do not allow for individual differences or promote full class participation. All students must do everything in the same way. In addition, an inordinate amount of class time is non-active.

While improvement has been noted concerning the militaristic discipline imposed by you, there are still variations of this approach such as the modification from left-face to face-left. In addition, you continue to fail to properly supervise your class and allow them to be conducted without direction or leadership by working on your gradebook during class time.

You have continued to make inappropriate comments to your students, including your response to the question, 'What are we doing today?,' which was posed by seventh grade students, by stating, 'We are going to make love.' Said response is deemed to be immoral conduct. In addition, in front of a class you asked a student 'Who beat you up?' In addition, you made a comment to girl students about them having sagging breasts and grabbed your breast and said these are firm.

\* \* \* \* \* \*

Your record keeping is inefficient as manifested by your tardiness in submitting classroom attendance and errors in your grade verification sheets, and changing first quarter grades during the third quarter.

The grounds for insubordination stated that Nevels displayed a hostile, defiant, disrespectful and insubordinate attitude toward the principal by the following:

You have continued to use the pay telephone outside the gym while your class was in session. You have also referred to the school secretary as being Dr. Engelhardt's 'spy' and 'lap dog'.

Your class time behavior and teaching methods have resulted in parents requesting the transfer of their children from your class.

Your militaristic and rigid approach to teaching resulted in your earlier transfer from West Richmond School to Valley

School and your unwillingness to alter your teaching methods is further evidenced by your defensive and almost hostile reactions to the suggestions and efforts made to help correct and improve your teaching methods.

A hearing on the charges spanned four days in August 1990. At the hearing various witnesses testified on behalf of the school board; several others testified on behalf of Nevels. At the conclusion of the hearing, the school board issued its findings of fact and conclusions of law. In summary, the school board found the following:

1. Teacher used "Simon Says" with seventh and eighth graders;

2. Teacher used militaristic commands in classroom teaching;

3. Teacher answered female student's question about the day's class plan with the remark "We are going to make love";

4. Teacher submitted his classroom attendance reports late, made errors in his progress and attendance reports and changed first quarter grades during the third quarter;

5. Teacher used pay telephone outside gymnasium after being instructed not to; and

6. Teacher referred to school secretary as the principal's "spy" and "lap dog".

The school board then terminated Nevels' contract of employment with the school district on grounds of incompetency, inefficiency and insubordination.

Appellant launches his attack on the school board's findings in three stages. First, he exhaustively reviews the evidence at the hearing, mustering all inconsistencies and discrepancies in the testimony to rebuff each of the board's findings. His second volley levels the charge that, even assuming the school board's findings are correct, its findings do not reflect incompetency or inefficiency, but, instead, merely show a few errors by Nevels and minor differences in teaching style. His final salvo directed against the school board's findings is its failure to establish by substantial and competent evidence that he failed to cure his alleged deficiencies.

■ Keeping in mind the deference accorded the school board by this court in reviewing the school board's decision, we believe that the record substantiates the board's findings; that evidence of appellant's shortcomings when reviewed in its totality rises to the level of incompetency, inefficiency and insubordination; and, finally, that appellant failed to remedy the complaints lodged against him during the curative period between the warning and charge letters. The record reflects that following the warning letter, principal directed Nevels to refrain from use of "Coach Simon" statements or "Simon Says" principles with his students, to avoid military commands such as "attention", "left-face", and "right-face", and not to use "generals" and "sergeants" in reference to students leading exercises. Despite this admonition, during subsequent visits to Nevels' classroom, the principal observed that Nevels continued references to "Simon Says" and used military commands. Appellant complains that neither Dr. Espiritu nor principal reiterated their comments to Nevels that these teaching techniques were considered unacceptable. The warning letter had explicitly referred to this problem area, and they had so informed him personally. Repeated warnings are not required by the Teacher Tenure Act.

Nevels had also been specifically warned of making inappropriate comments to students in the warning letter. Nevertheless, when asked by a thirteen year old female student what the class was going to do in gym class, he responded, "We are going to make love." Despite inconsistencies in all their accounts, several of the youngster's classmates testified to the incident, and their belief that he was not joking. Although Nevels understandably denies making such a remark, the determination of credibility of the witnesses is for the school board. *Cochran*, 815 S.W.2d at 59.

■ The school board's finding of Nevels' continued record-keeping problems was amply documented by the evidence before it. Appellant acknowledges that his attendance reports contained single errors in

each of the three months following the warning letter. His mid-quarter and quarterly progress reports also contained errors, such as grading students no longer in his classroom. The advent of computer technology in record keeping does not excuse these errors. After over twenty years in the teaching profession, Nevels should have taken whatever steps were necessary to insure the accuracy of his attendance reports and grades. The school board's finding in this regard is clearly proper.

Finally, the two instances of insubordination, the misuse of the pay telephone and derogatory references to school personnel are substantiated by the evidence. Appellant minimizes both, persuasively arguing that only one telephone call during the curative period was documented and that the remarks about the school secretary also happened only once. That any comments of this nature or use of the telephone were made at all, after the warning letter had directed him to refrain from inappropriate comments or use of the telephone, does indicate an insubordinate attitude. The record is replete with evidence of the school administration's ongoing battle with Nevels over his use of the telephone with the concern expressed that seventh and eighth grade students in physical education classes not be left unsupervised. Furthermore, proof of one charge which constitutes insubordination may be sufficient to support termination. *Smith v. Normandy School District*, 734 S.W.2d 943, 948 (Mo.App.1987). We deny appellant's first issue that the record does not support the school board's findings.

Appellant raises the issue that the school board improperly found that the "meet and confer" requirement of section 168.116.2 had been satisfied. That portion of the statute provides as follows:

168.116 Termination by board—notice—charges

\* \* \* \* \* \*

2. At least thirty days before service of notice of charges of incompetency, inefficiency, or insubordination in line of duty, the teacher shall be given by the school

board or the superintendent of schools warning in writing, stating specifically the causes which, if not removed, may result in charges. Thereafter, both the superintendent, or his designated representative, and the teacher shall meet and confer in an effort to resolve the matter.

Citing *Blue Springs Reorganized School District IV v. Landuyt*, 499 S.W.2d 33, 36 (Mo.App.1973), appellant emphasizes that the clear design of the statute in requiring a warning to be given a teacher thirty days before any termination of employment is to give the teacher an opportunity to know exactly what the complaints against him are and to afford him a chance to cure the situation. The purpose of the notice must be "a good faith effort to give the teacher a chance to remedy defects as contemplated by the statute." *Blue Springs Reorganized School District IV*, 499 S.W.2d at 37. Appellant argues that the school administration, especially the principal, acted unreasonably and in bad faith by not affording teacher constructive assistance before termination charges were issued.

We believe that the intent and purpose of section 168.116.2 have been satisfied. In the February 1990 warning letter specifically advising Nevels of his shortcomings, the school superintendent designated the principal and Dr. Espiritu to meet and confer with Nevels. The superintendent met with him on the day the warning letter was issued and explained its significance to him. He met with Nevels and Dr. Espiritu the next day as well. Later in March, the superintendent and principal met with Nevels. Dr. Espiritu separately observed five classes taught by Nevels on March 2, 5, 16 and 19 and May 2, 1990, issued written summaries, and reviewed them with Nevels on several occasions. The principal also met with Nevels on at least three occasions in connection with seven of his classroom observations. Appellant is correct that neither the school superintendent nor the principal met with him about methods for improving his record keeping. However, the school administration did have James Boley, the school counselor familiar with the mechanics of record keeping, meet with

Nevels to assist him in the preparation of quarterly progress reports. That the counselor had not been formally designated in writing as the superintendent's representative does not diminish the capacity in which he served. The school secretary also reviewed with Nevels the procedure step-by-step for preparing attendance reports. The several meetings between Nevels and the school superintendent, school principal, school secretary, school counselor and an expert on health and physical education hired by the school district solely to assist Nevels reflect a good faith effort by the school administration to assist Nevels to remedy his shortcomings. Point denied.

Appellant next contends that the school board violated sections 168.114.2 and 168.128 relating to the use of performance-based evaluations in the determination of Nevels' professional competency and efficiency. Appellant highlights the statutory language under section 168.128 that school boards "shall cause a comprehensive, performance-based evaluation for each teacher employed by the district," and that "[s]uch evaluations shall be ongoing and of sufficient specificity and frequency to provide for demonstrated standards of competency and academic ability." Elsewhere, the Teacher Tenure Act provides that "[i]n determining the professional competency of or efficiency of a permanent teacher, consideration should be given to regular and special evaluation reports prepared in accordance with the policy of the employing school district and to any written standards of performance which may have been adopted by the school board." Section 168.114.2.

The "Guidelines for Performance Based Teacher Evaluation in Missouri" prepared by the Missouri Department of Elementary and Secondary Education had been adopted by the Maplewood–Richmond Heights School District. These guidelines suggest that a summative evaluation for tenured teachers be conducted at least once every three years with additional evaluations occurring as deemed necessary by the administrator. After his transfer to Valley School in 1986, Nevels was given his first summative evaluation report in February 1988. That report was followed by another summative evaluation report in June 1988. After the June 1988 report, Nevels received a series of "job target sheets", defined as "measurable, precise objectives stated in terms [to] assist in attainment of goals," identifying and eliminating weaknesses in teaching skills. No summative evaluation reports were given Nevels after the June 1988 report prior to his receiving the warning letter some nineteen months later in February 1990.

Appellant states that the school district's own policies mandate that termination of a tenured teacher must be based upon the teacher's performance-based evaluations. Appellant argues that performance-based evaluations of Nevels made in accordance with school district policies showed him to be competent and efficient. Appellant concludes that the school board's termination of him for incompetency and inefficiency is contradicted by its own records assessing his performance favorably.

Although the summative evaluation reports done in February and June 1988 generally reflected that Nevels met all performance levels, the principal had notated several concerns on both reports. Indeed, despite appellant's emphasis that all his summative evaluation reports showed that he had met all performance expectations, he was sufficiently disenchanted with the contents of the February 1988 report to request a reassessment.

In addition to the summative evaluation reports issued in February and June 1988, three job targets specifically addressing his use of the pay telephone, inappropriate comments and teaching techniques were subsequently given him in November 1988 and February 1989. Several formative observations of Nevels' classroom with follow-up discussions were also conducted.

 Neither the Teacher Tenure Act nor the school guidelines require the school board to make its decision based solely on the performance-based evaluations. The guidelines specifically state that such information "may" serve as the basis for administrative decision-making. The school su-

perintendent testified that there is leeway in using the many tools and forms to evaluate teacher performance. He also testified that the summative evaluation reports, including their hand-scripted notations, were used as a framework for administrative decision-making in Nevels' case along with all other relevant factors. His testimony persuades us that the school board, while not limited to the evaluation reports did, in fact, consider them in reaching its decision concerning teacher's continued employment. This point is denied.

Appellant's final point contends the school board's decision for termination of his employment relied on matters outside the scope of the warning and charge letters. The warning letter stated in part: "[y]our record keeping relating to daily attendance and your monthly report are inefficient, in that there are often errors such as not listing students that are absent as absent." The charge letter stated as incompetency and inefficiency that "[y]our record keeping is inefficient as manifested by your tardiness in submitting classroom attendance and errors in your grade verification sheets, and changing first quarter grades during the third quarter." The school board found that his record keeping was inefficient "as manifested by his tardiness in submitting classroom attendance, errors he made in progress reports and attendance reports and the first quarter grades he changed during the third quarter." Appellant contrasts the language in the warning letter which refers only to errors in his daily and monthly attendance reports to the charge letter which cites not only his late submission of attendance reports but also errors in grade verification sheets and in changing first quarter grades during third quarter.

We regard such discrepancies as insignificant. The purpose of the warning letter required under section 168.116.2 is to apprise the teacher of the complaints against him and to afford him an opportunity to cure the deficiencies. The administration's efforts to avoid conclusory allegations such as those found in *O'Connell v. School District of Springfield R-12*, 1992 WL 79035 (Mo. banc April 21, 1992), is readily apparent. The warning letter and charge letter each mention that Nevels was incompetent and inefficient because of deficiencies in his record keeping. The school board's conclusions are supported by the evidence and sufficiently track the warning and charge letters. Appellant's final point is denied.

The judgment is affirmed in all respects.

PUDLOWSKI, P.J., and CRIST, J., concur.