Barbara JOHNSON, Appellant,

v.

FRANCIS HOWELL R–3 BOARD OF EDUCATION, Respondent.

No. 63514.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 11, 1994.

---

5. U.S. Const. Amends V and XIV; Mo. Const. Art. I, § 10.

Sally E. Barker, Schuchat, Cook & Werner, St. Louis, for appellant.

Thomas A. Mickes, Peper, Martin, Jensen & Hetlage, St. Louis, for respondent.

SIMON, Presiding Judge.

Appellant, Barbara Johnson, appeals the judgment of the Circuit Court of St. Charles County affirming the decision of respondent, Francis Howell R–3 Board of Education (Board), terminating her employment as a permanent teacher.

On appeal, appellant claims that the Board erred in: (1) applying an invalid construction of the meet and confer requirement of § 168.116.2 R.S.Mo.1986 (all further statutory citations will be to R.S.Mo.1986 unless otherwise noted) and in failing to find that the administrators for the Francis Howell R–3 School District (District) did not meet their statutory obligation to meet and confer in good faith with appellant; and (2) misconstruing and misapplying § 168.114.1(3) in terminating appellant for incompetency and inefficiency. We affirm.

The facts viewed in a light favorable to the Board's decision are as follows. In 1974, the District hired appellant as an elementary school teacher. She taught the fourth and fifth grades at the Castlio Elementary School. The superintendent and the assistant superintendent of the District and the principal and assistant principal of Castlio Elementary School monitored her performance. From 1983 to 1985, the administrators found that appellant had problems with individualized instruction, creating a positive learning environment for her students, communicating with parents and students in a positive manner, and establishing positive relationships with parents and students. The principal informed appellant that she should observe other teachers and attend teaching workshops, and appellant did so.

Although appellant showed some improvement, the principal and assistant principal found she was still performing inadequately in the same areas, and in May 1991, they imposed a professional development plan upon appellant. The plan required appellant to read articles on communication and instruction and attend teaching workshops. The plan also included guidelines for parent conferences and observations of her classes by administrators and teachers, who would confer with her after each observation. Appellant completed the plan, but the principal and assistant principal determined that her performance still suffered from the same problems. In addition, they noticed appellant became deficient in maintaining classroom discipline.

Due to these deficiencies, on October 25, 1991, the superintendent gave appellant a warning letter pursuant to § 168.116.2. The letter stated that if satisfactory improvement was not made by February 24, 1992 (probationary period), 120 days from the date of the letter, formal charges would be brought against her, and her employment may be terminated for incompetency, inefficiency, and insubordination. The letter also asserted that appellant performed the following areas incompetently and inefficiently: discipline, instruction, and communication. In support of this assertion, the letter specified thirty-eight documented incidents. The letter explained that appellant was insubordinate in failing to comply with the directives of administrators as exemplified by the continuation of her deficient performance. The administrators of the Castlio School, the principal and assistant principal, were designated as the superintendent's designated representatives. On October 28, 1991, the assistant superintendent, principal, and assistant principal met with appellant to explain to her how she could avoid termination and to answer her questions.

In November 1991, the principal and assistant principal instituted a new professional development plan (new plan). The new plan required that appellant videotape her classes, and that she review the tapes with the princi-

pal, and assistant principal, and teachers for their feedback. The new plan also required appellant to read articles on positive communication and self-esteem, consult with other teachers about improving her performance, and participate in role playing with administrators and teachers.

In December 1991, appellant made videotapes of some of her classes (December videotapes), and administrators and teachers reviewed them with her and offered her their suggestions. From October 30, 1991 to March 17, 1992, the principal and/or assistant principal gave her seventeen memoranda specifying how she could improve based on over thirty of their observations. The observations were scheduled and unscheduled. The principal and assistant principal formally met with her twelve times to discuss her performance. The assistant principal also met with her four times to discuss her performance. The principal and the assistant principal also gave appellant the opportunity to respond in writing to the memoranda, and appellant did so. Appellant also participated in role playing with administrators and teachers.

In February 1992, the deadline was extended to March 17, 1992. On February 21, 1992, the administrators made a summary of appellant's teaching progress up to that time based on over thirty documented observations. The summary was circulated only among the administrators and made the following conclusion:

*Rating based on a scale of 1–10, with 10 being the best*

The administration at Castlio school felt that [appellant's] overall performance as a teacher was rated as a 1.5 at the start of the process. Since the [warning letter], she has shown improvement, however, we would only rate her as 2.5....

Appellant's teaching was observed on February 27, March 2, 10, and 17. The assistant principal gave appellant memoranda praising her improvements and criticizing her deficiencies as seen during these observations.

After March 17, the administrators decided to recommend termination. Before issuing charges, however, they contacted Dr.

Jerry Valentine, Professor of Education at the University of Missouri, to evaluate the December videotapes. He told the administrators that her performance did not meet an acceptable standard of teaching. At the May 26, 1992 hearing, the assistant principal testified that Dr. Valentine's opinion on the December videotapes did not influence their decision to issue charges but was used only to obtain an unbiased and informed opinion of their decision to recommend termination.

On March 27, 1992, the administrators served appellant with a statement of charges (statement) against her. They charged her with incompetency, inefficiency, and insubordination. Specifically, the appellant was alleged to be incompetent and inefficient in maintaining discipline, providing individualized attention to students, and communicating to parents and students about student performance. The statement referred to eighty incidents in support, documented during the probationary period. The statement also asserted that appellant was insubordinate in failing to comply with directives of the administrators, and it specified five incidents in support, documented during the probationary period.

On May 26, 28, and 30, the Board held hearings which appellant attended with counsel. Appellant, the assistant principal, parents of students, teachers, and Dr. Valentine testified about appellant's performance. Dr. Valentine testified that he ascribes to the belief that students deserve excellence in teaching, and that from what he saw and studied, he found appellant did not meet that standard of quality. He also testified that in his opinion, appellant's teaching did not represent an acceptable standard of teaching. In addition, he testified that the observations and documentation of the administrators were in compliance with the statewide Performance Evaluation System and state law.

On June 15, 1992, the Board met and reviewed the transcript and the exhibits. The Board found that the principal and the assistant principal observed appellant's performance on numerous occasions during the probationary period and documented their observations and discussed them with appellant, who had an opportunity to reply orally

and in writing. The Board also found that appellant completed the mechanical tasks required in the new plan, but did not demonstrate the requisite behavior changes in that she failed to: (1) maintain adequate classroom discipline; (2) give sufficient individualized attention to ensure that each student had an opportunity to learn; (3) convey prompt and accurate information about student performance; (4) provide positive information to and about students; and (5) emphasize the positive aspects of student conduct and performance. From these findings, the Board concluded that appellant demonstrated an inability to perform the duties of a professional teacher in a manner acceptable to it, and terminated her for incompetency and inefficiency. The Board noted that although some improvement took place in her performance after the warning letter, her improvement was not sufficient to raise her performance to a satisfactory level. Further, the Board concluded that the repeated meetings and written and oral communications that occurred between appellant and the administration during the probationary period satisfied the meet and confer requirements as set out in § 168.116.2. Appellant appealed to the Circuit Court of St. Charles County, which affirmed.

We review the findings and conclusions of the Board rather than the judgment of the circuit court. *Cochran v. Board of Education*, 815 S.W.2d 55, 58 (Mo.App.1991). Our scope of review is limited to a determination of whether the decision of the Board is supported by substantial and competent evidence, whether the decision was arbitrary, capricious or unreasonable, or whether the administrative action constituted an abuse of discretion. *Id.* Further, we must construe the evidence in the light most favorable to the Board's decision, together with all reasonable inferences where supported. *Id.* at 59. If evidence before the Board would warrant either of two opposed findings, we are bound by the administrative determination, and it is irrelevant that there is evidence to support a contrary finding. *Id.* In short, we may not substitute our judgment of the evidence. *Id.* We also defer to the Board's determination of the credibility of the witnesses. *Id.* Finally, we note that "there is a strong presumption of validity in favor of a [Board's] decision because the courts are reluctant to interfere with [the Board's] broad discretion in matters affecting school management." *Id.*

The Teacher Tenure Act (Act), §§ 168.102–168.130 R.S.Mo.1986 and Cum. Supp.1992, is intended to establish strictly defined grounds and procedures for removing a permanent teacher, and deviations from these procedures are inherently prejudicial. *Lindbergh School District v. Syrewicz*, 516 S.W.2d 507, 512[3] (Mo.App.1974). We view the question of whether the Board complied with the procedural and substantive provisions of the Act in the termination proceeding as a question of law, and review under Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). *Iven v. Hazelwood School District*, 710 S.W.2d 462, 464[1] (Mo.App.1986). We will affirm the Board's judgment unless there is no substantial evidence to support it, unless it is against the weight of evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1–3].

The Act defines a "permanent teacher" as any teacher who has been employed as a teacher in the same district for five successive years. § 168.104(4) R.S.Mo. Cum.Supp.1992. A permanent teacher may be terminated for incompetency, inefficiency, or insubordination. Section 168.114.1(3). The procedure for the removal of a permanent teacher on the grounds of incompetence, inefficiency, or insubordination is a three-step process. Section 168.116; *Adkins v. Hazelwood School District*, 743 S.W.2d 869, 871 (Mo.App.1987). The first-step is a written warning specifically stating causes which, if not removed within a probationary period of at least thirty days, may result in charges. *Id.* The second-step is a requirement that the superintendent, or designated representative, meet and confer with the teacher in an effort to resolve the matter. *Id.* During the probationary period, the superintendent or a designated representative must exercise a good faith effort when giving the teacher a chance to remedy the defects. *Iven*, 710 S.W.2d at 465[5]. The purpose of the warn-

ing letter and probationary period is to allow the teacher an opportunity to realize her deficiencies and to give her the chance to cure or correct these deficiencies. *Selby v. North Callaway Board of Education,* 777 S.W.2d 275, 277[1–2] (Mo.App.1989). If necessary, the third-step is the service of written charges specifying with particularity the grounds alleged to exist for termination together with a notice of a hearing on the charges. Section 168.116; *Adkins,* 743 S.W.2d at 871. To terminate, the Board must find that the teacher remained incompetent, inefficient, or insubordinate during the probationary period by failing to cure those deficiencies set forth in the warning letter. *See Selby,* 777 S.W.2d at 278.

▇▇ In her first point, appellant contends the Board's failure to find that the administrators acted without good faith constituted a misreading of the meet and confer requirement of § 168.116.2. Appellant points out that an administrator made positive observations of appellant's teaching on March 10 and 17, 1992. Appellant maintains that based on these positive observations, the administrators should not have issued charges against her, or at a minimum, they should have extended the probationary period. Appellant also observes that the administrators consulted Dr. Valentine, and she asserts that this consultation constituted an impermissible delegation of their duty to meet and confer with appellant. She also argues that Valentine's opinion violated the probationary period's curative purpose because Valentine never met with her to discuss how she could improve, and his opinion employed an incorrect standard of excellence instead of the proper standard of incompetency or inefficiency. Further, appellant notes that the administrators told her to videotape some of her classes for the purpose of improving her performance, but did not tell her that they would use the videotapes to evaluate her performance. Appellant maintains that the administrators should have candidly informed her that the tapes would be used to evaluate her performance. Finally, appellant claims that the administrators based their decision to issue charges exclusively on the December videotapes and did not consider her three and a half months of improvement.

Appellant claims that for these reasons, the Board's failure to find that the administrators did not act in good faith constituted an incorrect application of § 168.116.

Appellant claims *Iven* supports her position.. In *Iven,* the superintendent gave teacher a formal notice of deficiencies which comported with the requirements of § 168.-116. *Iven,* 710 S.W.2d at 464. During the probationary period, the superintendent's designated representative made two unscheduled observations of the teacher's classes, but did not tell him how he could improve his performance. *Id.* at 465[5]. Another teacher, who was not a designated representative of the superintendent, also observed his classes and found that sufficient improvement to avoid termination had been made. *Id.* The Board terminated the teacher's employment. *Id.* at 463. The circuit court found that the Board failed to comply with the provision of § 168.116 because the superintendent's representative failed to meet and confer with the teacher in a good faith effort to give him a chance to remedy his teaching defects. *Id.* The Board appealed. *Id.* In affirming, we found that the evidence wholly failed to support a finding that the Board exercised the required good faith effort to give the teacher a chance to remedy defects. *Id.* at 465[5]. Appellant asserts that here, the principal and assistant principal also made unscheduled observations and gave insufficient feedback.

We disagree. Unlike the superintendent's designated representative in *Iven,* here the principal and/or assistant principal observed her teaching on over thirty scheduled and unscheduled occasions during that time, and met with her sixteen times to discuss her performance and to offer helpful suggestions. They also gave her written memoranda telling her how she could improve her teaching, and gave her the opportunity to respond in writing to their suggestions. Further, the record indicates that several months before the warning letter, the administrators met with her for the purpose of discussing her teaching problems, and gave her a professional development plan. Appellant's improvement was not adequate, and the administrators issued the warning letter. The rec-

ord indicates that the administrators met with her to explain the warning letter and what was expected of her. After this meeting, they imposed a second development plan and gave her more than three months to improve, although § 168.116.2 only requires at least thirty days.

Appellant knew that her continued employment depended on her teaching performance, and the administrators observed her teach in person and also reviewed the videotapes made by her. She cannot complain that the administrators evaluated her performance on the videotapes. In addition, the assistant principal testified that Dr. Valentine's opinion on the December videotapes did not influence their decision to issue charges but was used only to obtain an unbiased and informed opinion of their decision to recommend termination. Thus, the record shows that the administrators met and conferred in good faith with appellant during the probationary period as required by § 168.116.

Our conclusion comports with the decision in *Nevels v. Board of Education of the School District of Maplewood–Richmond Heights,* 822 S.W.2d 898 (Mo.App.1991). In *Nevels,* a permanent teacher was notified that he faced termination in thirty days unless he improved his performance. *Id.* at 900–1. During the probationary period, a designated representative of the superintendent observed the teacher's classes five times, made written and oral recommendations as to how he could improve, and reviewed those recommendations with the teacher on several occasions. *Id.* at 901. Another designated representative of the superintendent met with the teacher on at least three occasions in connection with seven of his classroom observations. *Id.* The administration found that he had not improved and issued charges, and the Board voted to terminate his employment. *Id.* at 902–3. The circuit court affirmed, and the teacher appealed claiming the administrators acted in bad faith by not affording him constructive assistance. *Id.* at 904[11]. We found that the several meetings between the teacher and the superintendent's designated representative reflected the administration's good faith effort to assist him in remedying his shortcomings. *Id.* at

905[11]. Here, the efforts of the principal and assistant principal exceeded those exerted in *Nevels.* Point denied.

■■■ In her second point, appellant claims that the Board erred in misconstruing and misapplying § 168.114.1(3) when terminating her for incompetency and inefficiency. The Board found that appellant had demonstrated an inability to perform the duties of a professional teacher in a manner acceptable to it. Appellant argues that the standard employed by the Board promotes arbitrary dismissals. Appellant contends that the appropriate standard is found in *Conder v. Board of Directors of Windsor School,* 567 S.W.2d 377 (Mo.App.1978). Appellant claims that in *Conder,* we articulated an objective standard of unfitness to teach at a minimum level, and asserts that this standard prevents arbitrary dismissals.

In *Conder,* a permanent teacher appealed the termination of her employment for incompetency and inefficiency. *Conder,* 567 S.W.2d at 378. The teacher claimed that the court's findings were not supported by substantial evidence. *Id.* at 379. In holding that there was substantial evidence to support the Board's decision, the court, in a footnote, noted a definition of incompetency from *Black's Law Dictionary* stating: "In order to establish a charge of incompetency, inefficiency, [sic] the [Board] had to demonstrate a 'lack of ability, legal qualification or fitness to discharge the required duty.' " *Id.* at 379 n. 2.

We do not disagree with the dispositive holding in *Conder.* However, in *Beck v. James,* 793 S.W.2d 416 (Mo.App.1990), we addressed the standard for terminating a permanent teacher for incompetency, stating:

> Section 168.114.1(3) RSMo (1986) provides that incompetency and inefficiency are grounds for termination. Incompetency is defined as the inability to perform professional teaching duties in a manner acceptable to the Board. *Artherton v. Board of Education of the School District of St. Joseph,* 744 S.W.2d 518, 522 (Mo.App. 1988).

*Id.* at 418[6]. In *Artherton,* a permanent teacher was terminated for incompetency.

*Artherton,* 744 S.W.2d at 519. In addressing the issue of the proper standard for terminating a permanent teacher for incompetency, the court stated:

.... While our statutes do not provide a definition of incompetency, the term has been stated as a teacher's ability "to perform his professional teaching duties in a manner acceptable to the Board." *Birdwell v. Hazelwood School District,* 352 F.Supp. 613, 626 (E.D.Mo.1972), aff'd, 491 F.2d 490 (8th Cir.1974). While in *Birdwell* the definition was declared relative to consideration of [termination of a probationary teacher,] § 168.126, this court perceives no reason why the same definition is not applicable to any proceeding regarding a tenured teacher wherein the question of incompetency is involved. This court adopts the foregoing definition and holds it is applicable to proceedings pursuant to § 168.116.

*Id.* at 522. In *Birdwell,* the court addressed the issue of the correct standard for terminating a probationary teacher for incompetency as follows:

### "Incompetency"

While "incompetency" is not defined in the statute explicitly, the scope of its intended definition may be discerned by comparing its usage in the several sections in which it is found. E.g. *Consolidated School District No. 4, Greene County v. Day,* 328 Mo. 1105, 43 S.W.2d 428 (1931).

Section 168.126(2) [R.S.Mo.Cum.Supp. 1992] states that "[i]f in the opinion of the board of education any probationary teacher has been doing *unsatisfactory work,* the board of education ... shall provide the teacher with a written statement definitely setting forth his alleged *incompetency* (emphasis added)...." Thus, incompetency is directly related to unsatisfactory work. That such "work" is work that is performed in an effort to comply with one's duties as a teacher is readily discerned from the remedial nature of § 168.126(2), and the fact that incompetency is but one of several causes for the Board's termination of an indefinite teaching contract. § 269.114, RSMo 1969, V.A.M.S. The rea-

sonable inference drawn from these uses of "incompetency" is that this term refers, in § 168.126(2), to the ability of a probationary teacher to perform his professional teaching duties in a manner acceptable to the Board.

*Birdwell,* 352 F.Supp. at 625–26[22–23]. We agree with the *Birdwell* rationale and its application to appellant.

■ Alternatively, appellant claims that even if this standard is correct, the Board misapplied it in this case because they relied on Dr. Valentine's opinion. Appellant asserts that the Act does not permit the termination of a tenured teacher for failing to achieve excellence, and that Dr. Valentine employed a standard of excellence when evaluating appellant's performance. Appellant claims that because the Board relied on his opinion, the Board held appellant's performance during the probationary period to an inappropriately high standard.

The record indicates that the Board found appellant failed to maintain classroom discipline, provide adequate individualized attention to students, and provide prompt and accurate information about student performance. From these findings, the Board concluded that appellant had performed incompetently and inefficiently during the probationary period. These findings of fact and conclusions of law make no reference to appellant's failure to meet a standard of excellence in teaching. Further, the assistant principal testified that Dr. Valentine's opinion on the December videotapes did not influence their decision to issue charges but was used only to obtain an unbiased and informed opinion of their decision to recommend termination. There is sufficient evidence to support the Board's findings independent of Valentine's opinion. Thus, we cannot say the Board used an inappropriate standard.

Finally, appellant claims that her teaching had sufficiently improved to avoid termination. She contends that the students in her classes learned, as evidenced by their standardized test averages. Appellant points out that she testified that she instituted new procedures to cure her problems with discipline, individual attention to students, and communication with parents and students.

She notes that even the administrators acknowledged that appellant had improved her performance.

However, even assuming that the standardized test scores and appellant's testimony weigh in her favor, the principal's and assistant principal's evaluations, and the assistant principal's testimony, indicated that appellant still had teaching deficiencies through out the probationary period. Thus the Board's decision was based on sufficient evidence, and we defer to the Board's decision, even if the evidence could support a different conclusion. *Id.* Point denied.

Judgment affirmed.

SMITH and PUDLOWSKI, JJ., concur.