John DAMERON, Appellant,

v.

**BOARD OF EDUCATION OF the LEBANON SCHOOL DISTRICT R-3, Respondent.**

No. 9978.

Missouri Court of Appeals, Springfield District.

April 7, 1977.

Donald E. Bonacker, Jerry L. Reynolds, Springfield, for appellant.

John F. Low, Lebanon, for respondent.

*PER CURIAM.*

On June 12, 1973, the Board of Education of the Lebanon R–3 School District voted to terminate the indefinite contract between the school district and John Dameron, a "permanent teacher."[1] In addition to containing certain "findings," the order of the board terminating the contract recited that the action was taken "because of inefficiency." Dameron appealed to the circuit court, where the action of the board was affirmed. Dameron appeals.

Dameron's first contention, a valid one, is that the procedure followed by the board failed to comply with § 168.116 which prescribes the steps which must be taken before a board of education may terminate the indefinite contract of a permanent teacher.

The statutes here involved are in the "Teacher Tenure Act" (§ 168.102 to § 168.-130 RSMo 1969, V.A.M.S.).

§ 168.106 provides, in essence, that the indefinite contract between a permanent teacher and a school district "shall continue in effect for an indefinite period," subject only to six conditions, one of which is: "(5) Termination by the board of education after a hearing as hereinafter provided."

§ 168.114 provides that an indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district "except for one or more of the following causes." The statute then lists six "causes," one of which is: "(3) Incompetency, inefficiency or insubordination in line of duty."

§ 168.116 outlines the procedure which must be followed before a board of education may terminate the indefinite contract of a permanent teacher. When the "cause" for termination is "incompetency, inefficiency, or insubordination in line of duty," and if the teacher requests a hearing, § 168.116 requires that the following steps be taken:

1. The school board or the superintendent of schools shall give the teacher "warning in writing, stating specifically the caus-es which, if not removed, may result in charges." This step must be taken at least 30 days before service of the notice mentioned in step 3.

2. "Thereafter" the superintendent (or his designated representative) and the teacher "shall meet and confer in an effort to resolve the matter."

3. The teacher shall be served with a "notice of a hearing upon charges, together with copy of charges." These charges shall be "written charges specifying with particularity the grounds alleged to exist for termination" of the indefinite contract.

4. The hearing shall take place not less than 20 nor more than 30 days after date of service of the notice mentioned in step 3.

Dameron contends that § 168.116 was violated in certain respects, including:

(a) The *warning* required by step 1 was defective in that it did not state specifically the causes "which, if not removed, may result in charges";

(b) The *charges* required by step 3 were defective in that they failed "to specify with particularity" the grounds alleged to exist for termination of the indefinite contract;

(c) Dameron was not apprised of the specific grounds alleged to exist for termination prior to the hearing before the board and Dameron was not thereafter given an opportunity to correct the alleged deficiencies.

The board's effort to comply with the warning required by step 1 consists of a letter dated February 9, 1973, from Superintendent Henningsen to Dameron. That letter reads:

"John Dameron

As executive officer of the Lebanon R–III Board of Education, I am giving you this warning in compliance with Section 168.116 RSMo 1970, of unsatisfactory work as a permanent teacher in the Lebanon R–III School system. These specific causes, as listed below, if not satisfactorily removed

1. See § 168.104(4) RSMo 1969, V.A.M.S.

within thirty days of the above date, may result in a statement of charges being filed by the superintendent. The specific causes of your unsatisfactory work are:

1. Lack of effective planning and organizing.

2. Lack of effective use of materials.

3. Unsatisfactory skill in stimulating learning.

4. Unsatisfactory classroom atmosphere and rapport with pupils.

5. Unsatisfactory classroom control.

At your convenience within the next ten days, you should schedule a conference with your superintendent to meet and confer in an attempt to remove these specific causes of unsatisfactory work. If we have not heard from you, we will meet on the tenth day in the superintendent's office at 4:00 p. m."

Apparently Dameron received the letter on the day it was written.

On February 14, 1973, Superintendent Henningsen conferred with Dameron. According to Henningsen that conference achieved the following purposes:

1. Dameron was informed of the legal procedures which must be followed for termination of an indefinite contract;

2. Dameron was told he could submit a written statement to rebut "the listed specific deficiencies," the latter apparently referring to the contents of the letter of February 9, 1973;

3. Dameron was informed that secondary administrators would visit his classes two or three times before March 5, 1973, for the purpose of making additional evaluations;

4. Another conference was rescheduled for March 5 or March 6.

Superintendent Henningsen, in his testimony at the hearing before the board, admitted that in the conference of February 14, 1973, he did not "get any more specific with Dameron" with respect to the causes contained in the warning letter of February 9, 1973—"I did not specifically speak beyond those five points."

The board's effort to comply with the "written charges" requirement of step 3 consists of a letter dated March 9, 1973, from Superintendent Henningsen to Dameron, which was delivered to Dameron six days later. The letter of March 9, 1973, reads:

"Dear Mr. Dameron:

As executive officer of the Lebanon R–III Board of Education, I am giving you this notice of official charges in compliance with section 168.116 RSMo 1970, with the intent to terminate your services as a permanent teacher in the Lebanon R–III school district effective June 30, 1973.

The specific charges of unsatisfactory work are:

1. Lack of effective planning and organizing.

2. Lack of effective use of materials.

3. Unsatisfactory skill in stimulating learning.

4. Unsatisfactory classroom atmosphere and rapport with pupils.

5. Unsatisfactory classroom control.

A hearing on these charges, if requested by you within 10 days, following the adopted R–III Board policy for procedures for the termination of a permanent employee, has been tentatively set for April 9, 1973."

On March 29, 1973, Superintendent Henningsen, in a letter to Dameron, advised him that the hearing before the board had been scheduled for April 12, 1973. The letter also stated: "According to board procedure a written statement of charges to be considered at the hearing will be presented to you a minimum of 24 hours before the hearing."

The board had adopted certain regulations dealing with the hearing procedure for the termination of a permanent teacher. Among those regulations was Regulation 3B which reads: "The teacher shall have the right prior to the hearing to receive a written statement prepared by the person filing charges that sets forth all of the allegations to be considered at the hearing

and to respond in writing to the statement of the person filing charges. This statement shall be delivered to the teacher a minimum of twenty four hours prior to the hearing." It was Regulation 3B to which Henningsen referred in his letter of March 29, 1973.

On April 11, 1973, Superintendent Henningsen delivered to Dameron's wife a six-page document entitled "Charges against John Dameron for board hearing of April 12, 1973." This document is identified as Exhibit 11.

Exhibit 11 was in outline form with five principal categories. Those categories were the five "specific causes of your unsatisfactory work" set forth in the letter of February 9, 1973, and were the same as the five "specific charges of unsatisfactory work" contained in the letter of March 9, 1973. Under each of the five principal categories Exhibit 11 listed specific items, each item describing a classroom observation of Dameron by one of his supervisors. Each item contained the name of the supervisor, the date of the observation, and what had been observed. The observations took place over a period of several months, the earliest being November 6, 1972, and the latest being March 6, 1973. Most of them occurred in January 1973 or earlier.

The things which were observed included the following: students were inattentive and working on other things; some students leaned back in their chairs; some students were tardy; some students stopped working during part of the class period; Dameron "did not work well in answering questions"; some students came to class without textbooks; in a German class, the use of a crossword puzzle in German was insufficient to occupy the class's attention for the day; students conversed with each other and did not pay attention to the teacher; during a skit there was excessive noise which Dameron attempted, without success, to reduce; when the class was separated into groups, and Dameron moved from group to group assisting the students, many students "did nothing ex-

cept when Dameron was with their group"; one student read a newspaper until reprimanded by Dameron; students were noisy during roll call; there was writing on radiators and pencil marks on the classroom walls; one student left class without permission; the classroom was "physically sloppy with desks out of order and paper on the floor."

In addition to the foregoing, Exhibit 11 described an incident which took place on November 17, 1972, involving the grade card of a female student. The student felt the grade was too low and an argument ensued between the student and Dameron, during the course of which, according to the student, Dameron made the remark, "take it and shove it." Exhibit 11 also contained the charge that Dameron had failed to write out the "curriculum guide for his speech classes." [2]

At 7 p. m. on April 12, 1973, the board held the hearing. Dameron and his attorney attended that meeting. Superintendent Henningsen represented the school administration. About 15 minutes before the hearing commenced, Dameron and his attorney were given a copy of Exhibit 11. Dameron's attorney protested the holding of the hearing and asserted that the board had failed to comply with § 168.116. In essence his charges of noncompliance were the same as those which are asserted on this appeal. The attorney emphasized that the specific information contained in Exhibit 11 had not been received by Dameron until April 12, although he conceded that Mrs. Dameron had received Exhibit 11 on April 11. The board hearing of April 12 lasted until 10:20 p. m., at which time the board decided to recess until a later date.

On April 17, 1973, Superintendent Henningsen wrote and delivered a letter to Dameron. This letter informed Dameron that he was being charged with inefficiency, that the "specific charges of inefficiency are:

(1) lack of effective planning and organizing;

2. Dameron prepared and submitted the curriculum guide shortly after receiving Exhibit 11.

(2) lack of effective use of materials;

(3) unsatisfactory skill in stimulating learning;

(4) unsatisfactory classroom atmosphere and rapport with pupils;

(5) unsatisfactory classroom control."

An enclosure to the letter was Exhibit 11 which, according to the letter, constituted "six pages of statements referring with particularity to the grounds alleged to exist for the termination of this permanent contract." The letter also enclosed the memoranda made by the observers, of which Exhibit 11 was a summary. The letter concluded by informing Dameron that a hearing would be held on the charges if he requested it.

On May 30, 1973, the board reconvened. Dameron, through his attorney, revoiced the objections which he had made at the opening of the April 12, 1973 hearing. The board proceeded to hear additional testimony. Superintendent Henningsen and other administrators recommended that Dameron's contract be terminated. On June 12, 1973, the board reviewed the transcripts of the prior hearings, made certain "findings and decisions," and voted to terminate Dameron's contract.

Missouri cases which have considered the regularity of termination proceedings conducted under § 168.116 include *Blue Springs Reorganized School District IV v. Landuyt,* 499 S.W.2d 33 (Mo.App.1973) and *Pollard v. Bd. of Ed. Reorg. Sch. Dist., Etc.,* 533 S.W.2d 667 (Mo.App.1976).

In *Blue Springs* there was an attempt to terminate a teacher's contract for "incompetence, inefficiency, or insubordination in line of duty." On March 8, 1972, in an effort to comply with the "warning" required by § 168.116–2, the board accused the teacher of the following:

(1) not following school policies;

(2) poor teacher-pupil relationship because of discipline;

(3) poor influence on pupil attitude.

The court held that these charges were too general to comply with § 168.116–2. At p. 36 the court pointed out that the purpose of the warning "is to give the teacher an opportunity to know exactly what the complaints against her are and to afford her a chance to cure the situation." On the same page the court said: "General principles of law do not tolerate the maintenance of proceedings to terminate a teacher upon such noninformative allegations." The court branded the "three generalized charges" as "pure ciphers." The termination proceedings were held invalid and the court ordered reinstatement of the teacher.

In *Pollard* the board instituted a termination proceeding upon the ground of "incompetence, inefficiency, or insubordination in line of duty." On March 20, 1973, in an attempt to comply with the "warning" required by § 168.116–2, the board notified the teacher "that improvement is needed in the following areas:

(1) Relationship with students

(2) Enthusiasm in teaching

(3) Disciplinary policies

(4) Relationship with parents."

The letter of March 20, 1973, was held to be "totally insufficient" to meet the requirements of § 168.116–2. The court, at p. 670, said: "All four charges were so broadly drafted that Pollard had no way of knowing exactly how she should improve her conduct during the trial period. All of the charges were susceptible to such a wide variety of interpretations as to violate the general prohibition against proceedings to terminate a teacher upon non-informative allegations. . . . Without knowledge of the specifics in which classroom conduct is deficient, a teacher who seeks to improve his or her teaching ability may find that such efforts result in classroom conduct that, in the minds of school authorities, is even less competent, less efficient, and less subordinate. In short, the teacher is caught in a double bind; the teacher must improve teaching qualities during the 30 day improvement period or risk termination. On the other hand, there is no assurance that *any* particular course of action undertaken by a teacher during this 30 day period will

constitute sufficient improvement in the eyes of the board and school authorities. The teacher finds herself in a position of struggling blindly toward undefined and unknown standards of conduct. This defeats the purpose of the 30 day statutory improvement period."

In *Pollard,* on May 17, 1973, the generalized warning contained in the March 20, 1973, letter was amplified in an apparent effort to comply with § 168.116–1 pertaining to the service of "charges." Finding it unnecessary to rule on the sufficiency of the May 17, 1973 charges to meet requirements of § 168.116–1, the court said at p. 671: "Even if the charges listed in that letter be considered sufficiently specific, this was not enough to cure the defects of the allegations in the 30 day warning letter, and the May 17th letter could at best only trigger a new 30 day improvement period. The Board would then have been required to begin compliance at that point with the requirements of § 168.116, which was not done. In other words, if the May 17th letter be deemed properly specific, then it would constitute only a warning letter under subsection 2 and there would be no final termination notice as required by subsections 1 and 3."

■ This court holds that the letter dated February 9, 1973, from Superintendent Henningsen to Dameron does not meet the requirements of § 168.116–2 with regard to the warning. The so-called "specific causes" set forth in that letter are not in fact specific. The letter of February 9, 1973, did not give Dameron "an opportunity to know exactly what the complaints against him were." *Blue Springs, supra.* As in *Pollard,* the causes set forth in the letter of February 9, 1973, to Dameron were so "broadly drafted" that Dameron "had no way of knowing exactly how [he] should improve [his] conduct during the trial period."

■ Similarly, the letter of March 9, 1973, did not comply with § 168.116 with regard to "written charges" for the reason that the so-called "specific charges" contained in that letter were too general. They did not specify "with particularity the grounds alleged to exist for termination" and thus fell short of compliance with § 168.116–1.

Foreign authorities consistent with this holding include *Lawson v. Wayne Community School Dist.,* 63 Mich.App. 57, 233 N.W.2d 713, 714[2, 3] (1975); *Sorin v. Bd. of Educ.,* 39 Ohio Misc. 108, 315 N.E.2d 848, 853[4, 6] (1974); *Board of Trustees, Laramie Cty. Sch. D. No. I v. Spiegel,* 549 P.2d 1161, 1170[1] (Wyo.1976).

It is the position of the school board that the letter of February 9, 1973, satisfied the "warning" requirement and the letter of March 9, 1973, satisfied the "written charges" requirement of § 168.116. This position is untenable in light of *Blue Springs* and *Pollard.* The first time Dameron received specific information concerning the nature of the complaints against him was on April 12, 1973, when he and his attorney were given a copy of Exhibit 11. Exhibit 11 also had been delivered to Dameron's wife, for transmission to him, on April 11, 1973. Although this court need not and does not rule on the adequacy of the contents of Exhibit 11 to constitute "inefficiency" within the meaning of § 168.-114, Exhibit 11 did meet the specificity requirements of the warning called for by § 168.116–2. However, before he received Exhibit 11, Dameron was not apprised of the specific causes of his alleged inefficiency.

Comparison of the generality of the letters of February 9 and March 9 with the specificity of Exhibit 11 may reveal an intention to evade the statutory demand for timely particularity.

■ The board, by its Regulation 3B, gave Dameron the right to receive, 24 hours prior to the hearing, "a written statement prepared by the person filing charges that sets forth all of the allegations to be considered at the hearing." However, the statutory rights which Dameron had under § 168.116, including receiving a warning coupled with 30 days "to cure the situation," *Blue Springs, supra,* could not be divested by the board, and the latter's com-

pliance with Regulation 3B is no justification for its noncompliance with the statute.

The board does not rely upon Exhibit 11 as constituting its compliance with § 168.-116–2. If it be assumed that Exhibit 11 was a sufficient "warning," the board does not claim that after its delivery to Dameron on April 12, or to his wife on April 11, the subsequent steps prescribed by § 168.116 were taken. Superintendent Henningsen's letter of April 17, 1973, to Dameron was ineffective as a compliance with § 168.-116–1 for the reason that 30 days did not intervene between the April 12 (or April 11) warning and the April 17 charges. Moreover, once Dameron had received Exhibit 11, there was no conference "thereafter" between Dameron and the superintendent in an effort to resolve the matter, as required by § 168.116–2.

The contents of the letters of February 9, 1973, and March 9, 1973, were no more than "noninformative allegations" of the type proscribed by *Blue Springs* and *Pollard.* The language of § 168.116, including the phrase "specifying with particularity" describing the "written charges," is unmistakable. Clarity and emphasis were achieved by resort to redundancy. The legislature demonstrated its intention that an indefinite contract, and perhaps a professional career itself, should not be imperiled by mere platitudes.

The judgment is reversed and the cause is remanded with instructions to the trial court to enter judgment, under the provisions of § 168.120–4, restoring Dameron to permanent teacher status and ordering that he receive compensation for any period for which he was suspended from work and further providing, pursuant to § 168.116–4 (subject to the doctrine of mitigation held applicable in *Pollard v. Bd. of Ed. Reorg. Sch. Dist., Etc.,* 533 S.W.2d 667, 671[7] (Mo. App.1976) based on *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138 (Mo. banc 1975)) that he be paid his salary lost during the pendency of the appeal.

All concur.

STONE, J., not participating.