Mercedes HANLON, Appellant,

v.

BOARD OF EDUCATION OF the PARKWAY SCHOOL DISTRICT, Respondent.

No. 49289.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 13, 1985.

Lisa S. Van Amburg, St. Louis, for appellant.

Thomas E. Tueth, Clayton, for respondent.

SMITH, Presiding Judge.

Mercedes Hanlon appeals from the judgment of the Circuit Court affirming the action of the Parkway School District Board of Education in terminating Mrs. Hanlon as a tenured teacher. We affirm.

Mrs. Hanlon was first employed by the District in 1972 as an elementary school counselor. She had previously taught for four years as an elementary teacher in Indiana and Michigan, then discontinued teaching to raise a family until the death of her husband. In 1981 Mrs. Hanlon's principal urged the superintendent to find her a classroom assignment as she was suffering from "counselor burn-out." She was placed into a junior high school teaching position in 1982. She admittedly did poorly in that position and requested, and was granted, an unpaid leave of absence to take additional college courses in elementary education. In the summer of 1983 she requested an elementary assignment in grades one through five. She was as-

signed to Sorrento Springs School as a second grade teacher. The principal there was Dr. John Morris.

During the first quarter of the school year Mrs. Hanlon experienced difficulties in this position. This resulted in an October 31 warning letter to her from the superintendent setting out her deficiencies and giving her at least thirty days to correct those deficiencies or face the threat of termination. The letter detailed with considerable precision her deficiencies and included examples. The letter appointed Dr. Morris as the representative of the Superintendent to meet and confer with Mrs. Hanlon in an effort to improve her performance. The areas of incompetency and inefficiency detailed in the letter included organization of instruction, assignments, instruction, team teaching, supervision and control, relationship with roommothers and volunteers, communication with parents, grading, and record keeping.

From October 31 until December 5, Dr. Morris closely monitored Mrs. Hanlon's performance including eleven occasions when he attended her classroom. He prepared written evaluations of these observations which were given to Mrs. Hanlon. In addition a principal from another elementary school, Ms. Warner, came to the school on three occasions to observe Mrs. Hanlon's performance. During the school year prior to December 5, Dr. Morris assigned district experts in reading and mathematics to assist Mrs. Hanlon and reassigned two of her three reading groups to other teachers. On December 5, Dr. Morris prepared an "Evaluation of Teaching Effectiveness" on Mrs. Hanlon. This evaluation found improvement in some areas but found unsatisfactory deficiencies remained in most areas. On December 14, Dr. Morris and Ms. Warner prepared a concluding evaluation on Mrs. Hanlon which was transmitted to the Superintendent. That evaluation found Mrs. Hanlon to be unsatisfactory in organization of instruction, assignments, team teaching, communication with parents, and grading. On January 3, 1984, the Superintendent advised Mrs. Hanlon by letter that he was recommending her termination. Attached to the letter was a notice of charges which further referred to the December 5 and December 14 evaluations. Those documents were also attached to the January 3 letter. Mrs. Hanlon requested and received a public hearing before the Board. After the hearing the Board unanimously terminated Mrs. Hanlon's indefinite contract. As part of its decision the Board made findings of fact and conclusions of law.

■ Mrs. Hanlon raises four points on appeal. The first challenges the adequacy of notice of her deficiencies and the absence of a reasonable opportunity to improve. Mrs. Hanlon received a detailed statement of her deficiencies in the warning letter and in the written evaluations made after the warning letter. She was accorded more than the thirty day period provided in Sec. 168.116.2 RSMo 1978, to remedy these deficiencies prior to service of the detailed written charges. The warning letter and the written charges did not contain "non-informative allegations" of a vague and general nature. *Blue Springs Reorganized School District v. Landuyt,* 499 S.W.2d 33 (Mo.App.1973) l.c. 36. The specific written charges dealt with the same matters as the warning letter and were not "new and different" charges. *Blue Springs Reorganized School District v. Landuyt, supra,* [3]. The thrust of the teacher's argument on this point is an attack on the objectivity of the principal and the cooperation of the other members of her teaching team. We will discuss that later. Mrs. Hanlon had adequate notice of her deficiencies and more than the statutory period to correct those deficiencies. *Rafael v. Meramec Valley R–III Board of Education,* 569 S.W.2d 309 (Mo.App.1978).

■ The teacher also challenges the Board's refusal to grant her discovery of documents and discovery of the substance

of testimony of the Superintendent's witnesses and the Board's refusal to subpoena Ms. Warner. Under Chapter 536, RSMo 1978, only three modes of discovery are provided for—depositions, subpoenas and subpoenas duces tecum. Sec. 536.073, 536.-077, RSMo 1978. Sec. 168.118 provides for subpoenas and subpoenas duces tecum. There is no statutory authorization permitting production of documents on motion or by interrogatory. *Miller v. Whaley*, 581 S.W.2d 916 (Mo.App.1979) [3–5]; *National Advertising Co. v. State Highway Commission*, 549 S.W.2d 536 (Mo.App.1977) [6, 7]. Due process (a concern raised by the teacher) requires that the teacher be apprised of the charges in order to prepare a defense. Sec. 168.116 affords that protection and that section was followed here. There is no due process requirement that the teacher be furnished the material she sought. There was no error in refusing production of documents.

■ The request for a subpoena for Ms. Warner was untimely. It came on the second night of a two night hearing and was made only after the superintendent stated he would not call Ms. Warner because she was ill. Ms. Warner's participation in the evaluation of Mrs. Hanlon was considerably less than that of Dr. Morris, and was contained in the report signed by both Ms. Warner and Dr. Morris about which Dr. Morris was extensively cross-examined. Her classroom observations were contained in lengthy "formal observation reports" admitted into evidence without objection at the close of the superintendent's case. We find it highly unlikely that Ms. Warner's testimony would have added or detracted much from the testimony of Dr. Morris. We find neither error nor prejudice in the denial of the last minute request to subpoena Ms. Warner.

■ The teacher also challenges the findings of fact of the Board on the basis that its finding of credibility lacks particularity.[1] While the Board is required to set out what facts it found to be true, *Century State Bank v. State Banking Board of Missouri,* 523 S.W.2d 856 (Mo.App.1975) 1.c. 858, we know of no requirement for it to explain why it chose to believe one witness rather than another. We find no defect in the Board's findings on credibility. The Board's findings of fact set forth clearly what facts it found to be true.

Mrs. Hanlon's final point is that the Board's finding of incompetency and inefficiency is unsupported by competent and substantial evidence. Our scope of review is set forth in *Rafael v. Meramec Valley R–III Board of Education*, supra, [6] as:

"In reviewing [an] administrative decision on evidentiary grounds, this court is to consider all competent evidence before the Board, but our inquiry is limited. We may only determine whether the Board reasonably could have made its findings and reached the decision it did. ... We may not substitute our judgment on the evidence, and we may not set aside the Board's decision unless it is not supported by competent and substantial evidence on the whole record, or it is contrary to the overwhelming weight of the evidence. Also we are to consider the evidence in a light most favorable to the Board's decision, together with all reasonable inferences which support it."

■ Determination of credibility of the witnesses is a function of the Board. *Merideth v. Board of Education*, 513 S.W.2d 740 (Mo.App.1974) [1–5].

■ The testimony before the Board and the documents introduced into evidence chronicle substantial deficiencies in Mrs.

---

1. "During the course of the hearing, there were numerous conflicts in testimony between, on the one hand, Principal John Morris and the Superintendent's witnesses and, on the other hand, Mrs. Hanlon and her witnesses. In those instances where there was a conflict in testimony, the Board finds the witnesses called on behalf of the Superintendent to be more credible, as supported by written evidence, and finds all related fact issues in favor of the Superintendent."

Hanlon's performance as a teacher. They also establish Dr. Morris' continuing efforts from the beginning of the school year to assist the teacher in recognizing her deficiencies and to correct them. The evidence shows assignments of specialists to assist Mrs. Hanlon, reductions in her teaching obligations, and the arrangement of visits to other schools to observe good second grade teaching techniques. The areas of deficiency included many of the most important obligations of a second grade teacher. Sec. 168.114 RSMo 1978, provides for termination of a permanent teacher for incompetency or inefficiency. Those terms are not further defined but in assessing them consideration is to be given to evaluation reports and written standards adopted by the School Board, if any. Sec. 168.114. There was no evidence of any such standards here. The operation of the school system is entrusted to the Board, which must of necessity determine the level of competency and efficiency it will require of teachers in its district. It must further be recognized that neither competency nor efficiency can be established by a measurement or weighing of a group of specific incidents or conduct which are then graded on an established scale. Rather competency and efficiency are inevitably determined by subjective evaluation of performance. That evaluation must be made by competent administrators which evaluation is subject to review by the Board. Here Mrs. Hanlon's performance was evaluated by two such competent administrators who reduced their evaluations to writing and set forth the basis for their conclusions. The Board in turn evaluated the credibility of Mrs. Hanlon's immediate supervisor, Dr. Morris, and concluded that his evaluation of Mrs. Hanlon was accurate, impartial, and justified. We are not authorized to second-guess that conclusion.

The teacher's evidence was directed to a claimed prejudice of Dr. Morris against her from the first meeting and to the alleged absence of cooperation by the other teachers in her team. The Board was free to reject this evidence, as it did. The evidence clearly establishes that whatever Dr. Morris' views of Mrs. Hanlon he provided her with assistance and counsel in attempting to correct her deficiencies. His reports contain praise of her industriousness, grooming and dress, and conscientiousness. His reports and written evaluations point out areas of improvement and specific good techniques utilized on occasions. His testimony and his reports and evaluations do not indicate a principal bent on "getting" a teacher regardless of her performance. The degree of cooperation of the team teachers was also in dispute. It is apparent that on occasions they were rude to Mrs. Hanlon, but the evidence also indicates attempts to assist her which were not always accepted, and occasions of aloofness by Mrs. Hanlon to team activities. It was not, of course, the responsibility of the team teachers to correct Mrs. Hanlon's deficiencies and any lack of cooperation by the team teachers is extraneous to most of the areas of deficiency found by Dr. Morris and the Board.

While one can have some sympathy with Mrs. Hanlon's claim that she was an inexperienced elementary classroom teacher, that status does not extend the time provided by Sec. 168.116.2 for correction of incompetent or inefficient performance. She was a permanent teacher and only because of that status was she entitled to have the representative of the superintendent "meet and confer" with her to correct her deficiencies and to have the Board conduct a hearing to determine her competency and efficiency. Compare 168.116 and 168.126. The evidence was sufficient to support the findings of the Board; those findings are supported by competent and substantial evidence on the whole record, and are not contrary to the overwhelming weight of the evidence.

Judgment affirmed.

SNYDER and SATZ, JJ., concur.