Charlotte **HELLMANN**, Appellant,

v.

**UNION SCHOOL DISTRICT,**
Respondent.

No. ED 85171.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 23, 2005.

54

Sally E. Barker, St. Louis, MO, for appellant.

Margaret A. Hesse, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

Charlotte Hellmann appeals from a judgment of the Circuit Court of Franklin County affirming the Union R–XI Board of Education's ("the Board") termination of her teaching contract with the Union R–XI School District ("District"). Ms. Hellmann contends that the Board erred in: (1) terminating her contract even though the District failed to "meet and confer"

with her in the manner required by Section 168.116.2 RSMo 2000 of the Missouri Teacher Tenure Act ("the Tenure Act"); [1] (2) construing the terms "incompetency," "inefficiency" and "insubordination" in violation of Section 168.114.1(3); (3) terminating her contract even though the Statement Charges did not give her notice of specific provisions of the Board policy and state and federal laws that she allegedly violated; and (4) applying an incorrect construction of Section 168.114.1(4). We affirm.

### Statement of Facts and Proceedings Below

Ms. Hellmann began her employment as a special education teacher with the District at the beginning of the 1988–1989 school year. During that year, Ms. Hellmann worked at both the junior high and the high school with students diagnosed with behavior disorders. Between 1989 and 2002, Ms. Hellmann worked primarily as a resource teacher for students with learning disabilities and behavior disorders at the high school.[2] As a resource teacher, Ms. Hellmann was available to students receiving special education services who were enrolled in regular classes but required special assistance to understand their class work and complete assignments.

The duties of a special education teacher in the District included individual case management. Typically, when a special education student entered high school, the school assigned that student to a special education teacher who served as that student's case manager throughout that student's high school career. As a case manager, the special education teacher was responsible for the planning and coordination of each student's special education program. Moreover, the case manager was responsible for evaluating students and completing the students' Individualized Education Programs ("IEPs"). Throughout her tenure with the District, Ms. Hellmann, like all of the other special education teachers, served as case manager for several assigned special education students.

Three weeks into the fall term of the 2001–2002 school year, the District implemented a reorganization of the special education program. As a result of the reorganization, special education teachers were assigned several subject matter classes to teach in addition to their case management responsibilities. The reorganization resulted in Ms. Hellmann managing a caseload of approximately 20 students as well as teaching six subject matter classes instead of primarily staffing the resource room.

The District appointed Shirley Dintelman as the Director of Special Education for the 2001–2002 school year. Ms. Dintelman was not, however, new to the District, having previously worked for the District as a counselor and then as Process Coordinator for the Special Education Program. Upon Ms. Dintelman's return to the District in her new position, she reviewed memoranda from the outgoing Director of Special Education which indicated that Ms. Hellmann's reevaluations and IEPs were not completed properly during the 1999–2000 and 2000–2001 school years. In light of this information and in preparation for her new tasks as Director, Ms. Dintelman reviewed the files of all students receiving special education services and requested that the special education teachers, including Ms. Hellmann, provide the missing documents by September 2001. Ms. Hell-

---

1.  All statutory references are to RSMo 2000 unless otherwise indicated.

2.  For two years during this time, Ms. Hellmann also taught one science class.

mann failed to submit the missing documents.

In light of Ms. Hellmann's failure to submit the missing documents as well as Ms. Hellmann's failure to submit reevaluations and IEPs during the two preceding school years, Ms. Dintelman and Superintendent Gene Garrison decided to implement a Job Target for Ms. Hellmann.[3] The October 25, 2001 Job Target cited two "improvement objectives." First, the Job Target required that Ms. Hellmann complete all required forms and records within "required timelines" and second, that Ms. Hellmann assured that "all activities required to complete forms and records meet process and compliance standards." The Job Target contained a deadline of December 20, 2001. Ms. Hellmann and Ms. Dintelman met four times during November to discuss the improperly completed areas in Ms. Hellmann's IEPs. They also reviewed the Missouri special education "Standards and Indicators."

As of the December 20 Job Target deadline, Ms. Hellmann only submitted a portion of the required paperwork. In light of Ms. Hellmann's partial compliance, Ms. Dintelman extended the Job Target deadline to January 16, 2002. During the extension period, Ms. Dintelman reviewed the paperwork Ms. Hellmann submitted and returned several documents with identification of specific errors and omissions. Although Ms. Dintelman agreed to an additional one-day extension, Ms. Hellmann did not submit the remainder of her work until January 24, 2002.

At that time, Ms. Dintelman, Ms. Hellmann and Principal VanZee signed a Summary of Progress stating that Ms. Hellmann's completion of the Job Target was unacceptable. Principal VanZee and Ms.

Dintelman also warned Ms. Hellmann that continued failure to comply with paperwork requirements would result in further action. Ms. Dintelman reviewed the remaining paperwork submitted by Ms. Hellmann and drafted a memorandum to Ms. Hellmann indicating additional concerns with the content of the paperwork.

The District issued Ms. Hellmann a notice of deficiencies pursuant to Section 168.116 on February 19, 2002. The notice informed Ms. Hellmann that failure to satisfactorily improve her performance could result in termination of her employment for "willful and/or persistent violation of Board of Education policy; and/or incompetence, inefficiency and insubordination." The notice contained nearly five pages of specific performance deficiencies largely related to failure to complete required paperwork for students assigned to Ms. Hellmann. The District assigned Ms. Dintelman to "meet and confer" with Ms. Hellmann to help her address the identified deficiencies.

Ms. Dintelman met with Ms. Hellmann several times during the thirty-day period following the notice of deficiencies. At the end of the thirty days, on April 2, 2002, Ms. Dintelman told Ms. Hellmann that her paperwork was timely and compliant. Nevertheless, Ms. Dintelman extended the effect of the notice of deficiencies until February 2003.

As the 2002–2003 school year progressed, Ms. Hellmann again began to fall behind on paperwork. In a team meeting on November 13, 2003, Ms. Dintelman requested that teachers submit a copy of IEPs to her within 10 days of the IEP meetings. However, by the end of Janu-

---

**3.** A Job Target is a written document that outlines specific areas of concern, the goals the teacher must meet in order to rectify those concerns and the methods for achieving those goals.

ary, Ms. Dintelman had not received copies of Ms. Hellmann's IEPs.

On January 31, 2003 Ms. Dintelman, Ms. Hellmann and an assistant superintendent met to discuss the problems cited in the February 19, 2002 notice of deficiencies. Because the problems identified in the notice continued to exist, the notice was extended through the school year. The assistant superintendent warned Ms. Hellmann that failure to remediate the problems in the notice could result in a "Statement of Charges."

At that same meeting, Ms. Dintelman reviewed with Ms. Hellmann which documents were overdue and which documents were incomplete or completed incorrectly. Nonetheless, Ms. Hellmann did not submit copies of the IEPs and other documents within ten days of the meetings with the students, as requested by Ms. Dintelman. Moreover, when Ms. Hellmann finally submitted her IEPs, they contained errors, including: wrong dates, an inadequate "postsecondary goals list" and missing "Notification of Meeting" and/or "Notification of Action" forms. Ms. Hellmann also failed to identify "agency linkages" on some forms and "transition service plans" for certain students.

As a result of Ms. Hellmann's persistent failure to complete her work correctly and in a timely fashion, Dr. Tilson issued a Statement of Charges for incompetency, inefficiency and insubordination as well as willful and persistent violation of, and failure to obey, school laws against Ms. Hellmann on May 5, 2003. After detailed references to particular acts of disobedience relating to individual students, the Statement charged Ms. Hellmann with violation of state and federal laws, the Individuals with Disabilities Education Act ("the IDEA") and "the school laws of the State of Missouri" contained in Sections 162.670

and 162.700 of the Missouri Revised Statutes.

After receiving the Statement, Ms. Hellmann requested a hearing before the Board. In its case, the District called two witnesses, Ms. Dintelman and Dr. Tilson. Dr. Tilson testified that she and Ms. Dintelman met with Ms. Hellmann at the beginning of the 2002–2003 school year to remind Ms. Hellmann that the notice of deficiencies remained in place. Dr. Tilson also testified that this was her only direct involvement and she relied on Ms. Dintelman's observations in issuing the charges. Ms. Dintelman testified in detail about the problems with Ms. Hellmann's paperwork and Ms. Dintelman's efforts to cure the deficiencies.

Ms. Hellmann called three former special education students, one parent, two District teachers and one special education aide to testify regarding her superior performance as a special education teacher. Ms. Hellmann also testified. She stated that she had never intentionally violated or disobeyed any law or policy. Ms. Hellmann admitted her mistakes and testified that they were inadvertent and the paperwork requirements were unduly burdensome. She admitted that in many cases she did not submit the paperwork to Ms. Dintelman within ten days of the meetings per Ms. Dintelman's request. She also rebutted one charge of incompleteness by testifying that Ms. Dintelman had not required that portion of the paperwork to be completed until after the date the forms were submitted.

The Board issued its Findings of Fact and Conclusions of Law terminating Ms. Hellmann's teaching contract. The Board concluded that Ms. Hellmann was incompetent, inefficient and insubordinate and had willfully and persistently violated and failed to obey Missouri's school laws and Board policies. Ms. Hellmann appealed

the Board's decision to the Circuit Court of Franklin County which affirmed the Board's decision. This appeal followed.

## Standard of Review

In an appeal of an administrative decision, we review the findings and decision of the administrative decision-maker, here, the Board, rather than the judgment of the circuit court. *Gerig v. Board of Education of the Central School District R–III*, 841 S.W.2d 731, 733 (Mo.App. E.D. 1992). Our review is limited to whether the Board's findings and decision are supported by competent and substantial evidence based on the record as a whole. *Id.* We consider the evidence and view all reasonable inferences in the light most favorable to the Board. *Id.* at 732. We presume that the Board's decision is valid, and cannot reverse merely because we might have reached a different conclusion. *Id.* at 733. Moreover, the presumption in favor of the Board's decision is strong and can only be overcome by clear and convincing evidence that the decision was arbitrary, capricious, unreasonable or an abuse of discretion. *Id.*

We have more leeway when a school board's interpretation or application of law is challenged. In that case, we "may independently weigh the evidence and resolve factual issues, but in so doing '[we] shall give due weight to the opportunity of the agency to observe the witnesses, and to the expertness and experience of the particular agency.'" *Lile v. Hancock Place School District*, 701 S.W.2d 500, 504 (Mo. App. E.D.1985) (citation omitted).

## Discussion

In her first point on appeal, Ms. Hellmann contends that the Board erred in terminating her contract for incompetency, inefficiency and insubordination because the District failed to comply with the strictures of the Tenure Act. Specifically, Hellmann asserts that the District failed to meet and confer with Ms. Hellmann as required by Section 168.116.2. In response, the District asserts that it not only met, but exceeded, the requirements of the Tenure Act.

The Tenure Act sets forth the procedure for terminating a tenured teacher. Under the Tenure Act, a district cannot terminate a teacher on the grounds of incompetency, inefficiency or insubordination unless the district follows a detailed three-step procedure. *Johnson v. Francis Howell R–3 Board of Education*, 868 S.W.2d 191, 195 (Mo.App. E.D.1994). We have described this procedure as "strictly defined" and not subject to evasion. *Iven v. Hazelwood School District*, 710 S.W.2d 462, 464 (Mo.App. E.D.1986). The first procedural step requires the district to give the teacher a written warning specifically stating causes which if not removed may result in charges. *Id.* The second step requires the district's superintendent, or a designated representative, to "meet and confer" with the teacher to assist the teacher to improve the deficiencies. *Id.* The third step, which occurs if the deficiencies are not cured, requires issuance of "charges specifying with particularity the grounds alleged to exist for termination together with a notice of hearing on the charges." *Id.*

In this case, Ms. Hellmann asserts that the District failed to "meet and confer" with her in the manner required by Section 168.116.2. Specifically, Ms. Hellmann contends that the District improperly utilized a "hands-off" or "sink or swim" approach in lieu of meeting and conferring. In support of her contention, Hellmann relies solely on *Iven v. Hazelwood, supra.*

In *Iven*, the district issued a formal notice of deficiencies to a tenured math teacher outlining "causes relating to com-

petency in quality of performance and general responsibility." *Iven*, 710 S.W.2d at 464. Following the notice to the teacher, the district's designated representative observed four classes on three different days. None of the observations were scheduled. The teacher and the district's representative met for ten minutes after one class and briefly after another, but no direction for improvement was given to the teacher on either occasion. *Id.* at 465. The teacher's evaluation period was extended to the next school year, but the district's designated representative never observed or evaluated the teacher again. Rather, the Chairman of the Math Department, who was not the district's designated representative, observed the teacher and, at the teacher's hearing testified that the teacher had "made the necessary improvements to avoid termination proceedings." Nevertheless, the board terminated the teacher. On appeal, the circuit court found, *inter alia*, that the board failed to comply with Section 168.116 because the superintendent who was chosen as the district's representative, failed to meet and confer with the teacher in a good faith effort to assist the teacher in remedying any defects in his performance. *Id.* at 463. The board appealed the circuit court's determination and we affirmed finding that the evidence failed to support a finding that the board "exercised the required good faith effort to give the teacher a chance to remedy defects." *Id.* at 465.

Ms. Hellmann asserts that the district's approach here is indistinguishable from the "sink or swim" approach we condemned in *Iven*. We disagree. Here, the record discloses that Ms. Dintelman worked with Ms. Hellmann prior to the time the District issued its notice of defi-

ciencies, after the issuance of the notice of deficiencies and up to the time it issued written charges. In contrast to *Iven*, there is evidence here that the District representative met with Ms. Hellmann multiple times with the specific intention of assisting Ms. Hellmann in improving her performance. In fact, Ms. Dintelman began meeting with Ms. Hellmann as soon as the District issued the October 25, 2001 Job Target to assist Ms. Hellmann to meet the listed "improvement objectives." The record reflects that Ms. Hellmann and Ms. Dintelman met four times to discuss the improperly completed areas in Ms. Hellmann's IEPs. During one of these meetings, Ms. Dintelman reviewed with Ms. Hellmann Missouri's special education "Standards and Indicators." [4]

Despite Ms. Dintelman's efforts to help Ms. Hellmann meet the Job Target, when the December 20, 2001 deadline arrived, Ms. Hellmann only submitted a portion of the required paperwork. In an effort to further facilitate compliance with the improvement objectives without resorting to further remedial action, Ms. Dintelman extended the Job Target deadline to January 16, 2002. During the extension period, Ms. Dintelman reviewed the paperwork Ms. Hellmann submitted and returned several documents with identification of specific errors and omissions. When Ms. Hellmann missed the extended Job Target deadline, Ms. Dintelman agreed to an additional one-day extension. Nonetheless, Ms. Hellmann did not submit the remainder of her work in a timely fashion.

At that time, Ms. Dintelman, Ms. Hellmann and Principal VanZee signed a Summary of Progress indicating that Ms. Hellmann's completion of the Job Target was unacceptable. Principal VanZee and Ms.

---

4. "Standards and Indicators" are interpretations of the various topics contained in the State Plan for Special Education designed to give teachers guidance as to how to comply with the State Plan for Special Education and other regulations. ·

Dintelman also warned Ms. Hellmann that continued failure to comply with the paperwork requirements would result in further action. Ms. Dintelman reviewed the remaining paperwork submitted by Ms. Hellmann and drafted a memorandum to Ms. Hellmann indicating additional concerns with the content of the paperwork.

The District issued a notice of deficiencies to Ms. Hellmann because of her paperwork deficiencies on February 19, 2002. The notice informed Ms. Hellmann that failure to satisfactorily improve her performance could result in termination of her employment for willful and persistent violation of Board policy and/or incompetence, inefficiency and insubordination. The notice contained nearly five pages of specific performance deficiencies largely related to failure to complete required paperwork for students assigned to Ms. Hellmann. The District assigned Ms. Dintelman to "meet and confer" with Ms. Hellmann to help her address the identified deficiencies. The record reveals that in the thirty days following the issuance of the notice of deficiencies, Ms. Dintelman met with Ms. Hellmann at least once a week and sometimes more often. At these meetings, Ms. Dintelman identified for Ms. Hellmann specific errors and omissions in Ms. Hellmann's paperwork, and further identified overdue paperwork.

By April 2, 2002, Ms. Hellmann achieved compliance with her outstanding paperwork requirements. However, the administration reiterated to Ms. Hellmann that the notice of deficiencies remained in effect until February 2003 because the administration believed that it was necessary that Ms. Hellmann demonstrate her ability to complete her professional responsibilities without relapses in compliance.

Ms. Hellmann argues that she received no assistance from Ms. Dintelman following April 2, 2002. The record, however, supports a contrary conclusion. Indeed, the record establishes that Ms. Dintelman assisted Ms. Hellmann in the 2002–2003 school year.

In August 2002, both Dr. Tilson and Ms. Dintelman met with Ms. Hellmann to remind her that the notice of deficiencies remained in effect. Ms. Hellmann began the 2002–2003 school year without any IEPs or reevaluations due until December 2002. Ms. Dintelman held team meetings for all high school special education teachers, including Ms. Hellmann, every two weeks. At those meetings, Ms. Dintelman provided continuous reminders to Ms. Hellmann about upcoming due dates. Furthermore, Ms. Dintelman reminded Ms. Hellmann that she was available for questions about upcoming paperwork requirements. Nevertheless Ms. Hellmann failed to submit IEPs or reevaluation documents that were due in December 2002 and January 2003 until February 10, 2003.

Concerned by the delay in receiving the required paperwork, Ms. Dintelman and an administrator met with Ms. Hellmann and extended the notice of deficiencies through the end of the school year. Upon extending the notice of deficiencies, Ms. Dintelman made additional efforts to assist Ms. Hellmann to correct the areas in which she was deficient. Specifically, Ms. Dintelman issued written memoranda, offered verbal guidance during conferences, and ensured that Ms. Hellmann knew the areas of her performance which required improvement. In addition, the record establishes that Ms. Dintelman provided Ms. Hellmann resources to assist with compliance, such as copies of relevant legal requirements and sample IEPs. By holding numerous conferences with Ms. Hellmann, offering verbal and written reminders of relevant due dates and modeling correctly completed documents, the District com-

plied with the "meet and confer" requirement of Section 168.116.2. Point denied.

In her second point on appeal, Ms. Hellmann contends that the Board erred in terminating her because the Board improperly construed the statutory terms "incompetency," "inefficiency" and "insubordination" in violation of Section 168.114.1(3). Specifically, Ms. Hellmann asserts that the Board improperly based its findings and conclusions on Ms. Hellmann's non-teaching, non-substantive processing of burdensome administrative paperwork. Additionally, Ms. Hellmann alleges that the Board erroneously failed to consider Ms. Hellmann's past teaching evaluations before reaching its decision.

■■■■ As a preliminary matter, we note that although the terms incompetency and inefficiency are not statutorily defined in the Tenure Act, several cases have judicially defined the scope of these terms to mean the inability "to perform . . . professional teaching duties in a manner acceptable to the Board." *Artherton v. Board of Education of the School District of St. Joseph,* 744 S.W.2d 518, 522 (Mo.App. W.D.1988); *Beck v. James,* 793 S.W.2d 416, 418 (Mo.App. E.D.1990); *Johnson,* 868 S.W.2d at 197.[5] Indeed, because the operation of the school system is entrusted to a board of education, each respective board must determine the level of competency and efficiency required in its district. *Hanlon v. Board of Education of the Parkway School District,* 695 S.W.2d 930, 934 (Mo.App. E.D.1985). "Neither competency nor efficiency can be established by a measurement or weighing of a group of incidents or conduct which are then graded on an established scale." *Id.* Rather, competent district administrators evaluate a given teacher's competency and efficiency

through subjective evaluation of performance. *Id.* A board reviews the credibility of the administrator's evaluation. *Id.* As a general matter, we are not authorized to second-guess the board's ultimate conclusion. *Id.*

■■■ In this case, the Board heard uncontradicted testimony from Ms. Dintelman who testified that, in the District, the timely and accurate completion of special education paperwork is a crucial component of a special education teacher's job. Ms. Dintelman further testified that failure to comply with paperwork requirements can result in a loss of free and appropriate education for students with special educational needs.

Ms. Hellmann did not dispute the fact that case management and the resultant paperwork are an integral part of a special education teacher's job. Rather, Ms. Hellmann argued that Congress is considering reducing some of these burdensome paperwork requirements. In addition, Ms. Hellmann stressed that her paperwork deficiencies did not harm her students or result in parent complaints about her services. To that end, Ms. Hellmann offered the testimony of former students and parents each of whom acknowledged that Ms. Hellmann played an integral role in ensuring these students' educational achievement and advancement.

■■■ We need not decide the legitimacy of Ms. Hellmann's contentions regarding the unduly burdensome nature of special education paperwork because the issue in this case is whether the record contains sufficient evidence of Ms. Hellmann's failure to comply with the District's special education paperwork requirements. Furthermore, Ms. Hellmann provided no sup-

---

**5.** Likewise, insubordination is not defined in the Tenure Act, however, Missouri cases have defined insubordination as "a willful disre-

gard of express or implied direction or a defiant attitude." *See McClellon v. Gage,* 770 S.W.2d 466, 469 (Mo.App. S.D.1989).

port for the proposition that the District must demonstrate actual harm to students in order to meet its burden of proving a teacher's inability to perform her professional teaching duties. Indeed, we have specifically held that "there is no requirement of evidence of actual harm" to meet the burden of demonstrating incompetency and inefficiency under Section 168.114.1(3). *Beck,* 793 S.W.2d at 418–19.

■ Ms. Hellmann also asserts that the Board failed to consider performance evaluations in violation of the Tenure Act. Section 168.114.2 of the Tenure Act provides:

> In determining the professional competency of or efficiency of a permanent teacher, consideration should be given to regular and special evaluation reports prepared in accordance with the policy of the employing school district and to any written standards of performance which may have been adopted by the school board.

Although this statutory section provides that a board should consider evaluations when it determines competency or efficiency, the Tenure Act does not require a board to base its decision solely on these performance-based evaluations. *Nevels v. Board of Education of the School District of Maplewood–Richmond Heights,* 822 S.W.2d 898, 905 (Mo.App. E.D.1991).

■ Here, the record reflects that the Board considered several performance evaluations as well as testimony from the supervisor who supervised and evaluated Ms. Hellmann in her daily duties as a special education teacher. Although the District admits that it failed to maintain some copies of Ms. Hellmann's past evaluations, Ms. Hellmann was permitted to testify regarding the content of missing evaluations. To that end, the Board heard testimony regarding many satisfactory evaluations and some exemplary evaluations.

The Board heard ample testimony that the accurate and timely completion of special education paperwork is inextricable from a special education teacher's "professional teaching duties." Indeed, we have previously held failure to comply with a district's paperwork requirements can support a finding of incompetency and inefficiency. *See Nevels,* 822 S.W.2d at 902–03 (evidence of physical education teacher's chronic record-keeping problems supported a finding of incompetency and inefficiency). As a result of this testimony, as well as virtually uncontradicted testimony detailing the deficiencies in Ms. Hellmann's paperwork, the record supports the Board's finding that, viewed in their totality, Ms. Hellmann's deficiencies rise to the level of incompetency, inefficiency and insubordination. Point denied.

■ In her third point on appeal, Ms. Hellmann asserts that the Board erred when it terminated her teaching contract because the written charges the Board provided Ms. Hellmann pursuant to Section 168.116.1 failed to identify the specific provisions of Board policy and State special education laws that she allegedly willfully and persistently violated. Specifically, Ms. Hellmann contends that Charges III and IV of the Statement of Charges fail to state "with particularity the grounds alleged to exist for termination" in violation of Section 168.116.1. In essence, Ms. Hellmann asserts that a failure to identify specific provisions of specific laws negates the effectiveness of the written charges required by Section 168.116.1.

In support of her contention, Ms. Hellmann cites *Iven v. Hazelwood, supra,* and *Dameron v. Board of Education of Lebanon School District R–3,* 549 S.W.2d 671 (Mo.App.1977). Although both cases construe Section 168.116.2's warning letter re-

quirements, neither supports Ms. Hellmann's proposition that Section 168.116.1, which requires specificity of the written charges, mandates citation to specific provisions within state and federal special education laws.

In *Iven*, we found that a board failed to comply with Sections 168.116.1 and .2 because the district's letter specifying charges listed only "competency lacking in quality of performance, and competency lacking in general responsibility" as the grounds for termination. *Iven*, 710 S.W.2d at 466. We held that these grounds fell short of the specificity requirement because they made it impossible for the teacher to know what grounds would be tried at the termination hearing. *Id.* Likewise, in *Dameron*, the teacher received a letter which listed five general areas of unsatisfactory work which the appellate court found to be "noninformative allegations" leaving the teacher ill-prepared for his hearing. *Dameron*, 549 S.W.2d at 677.

The holdings in both cases turned on each district's respective failure to detail specific incidents of misconduct, which would serve as the basis for later charges of incompetency, inefficiency and insubordination. Neither case turned on a board's failure to cite to specific "school laws of the state" or "published regulations of the board" in its written charges alleging the willful and persistent violation of state or federal school laws.

In this case, Ms. Hellmann received particularized, written charges detailing the grounds for her termination, including instances of specific deficient conduct. The grounds alleged in the written charges cited provisions of state school law and Board policy and tracked the evidence later presented at Ms. Hellmann's termination hearing. In light of the fact that the purpose of the specificity requirement of Section 168.116 is to ensure that the teach-

er has notice of the complaints against her in order to allow her to adequately prepare for the termination hearing, we find that the written charges served on Ms. Hellmann complied with Section 168.116. Point denied.

In her final point on appeal, Ms. Hellmann contends that the Board's decision to terminate her teaching contract was arbitrary, capricious, unreasonable and in excess of statutory authority. Specifically, Ms. Hellmann asserts that the Board applied an incorrect legal construction of Section 168.114.1(4) in that it did not: (1) reference a law which forbade or commanded action by a teacher; and (2) prove that Ms. Hellmann willfully and knowingly violated such law. In response, the District argues that the Board's decision specifically concludes that Board Policy IGBA requires that District programs and services comply with state and Local plans for Part B of the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. Section 1400 *et seq.*, and that Ms. Hellmann's failure to comply with the IDEA's paperwork requirements both as to timeliness and accuracy ran afoul of Board Policy IGBA.

As an initial matter, we disagree with Ms. Hellmann's contention that Section 168.114.1(4) does not apply to violations of the IDEA because it is a federal law rather than a state school law. Missouri incorporated the IDEA into state law in Section 162.670, which provides, in pertinent part, as follows:

> ... it is hereby declared the policy of the state of Missouri to provide or to require public schools to provide to all handicapped and severely handicapped children within the ages prescribed herein, as an integral part of Missouri's system of gratuitous education, a free appropriate education consistent with the provisions set forth in state and

federal regulations implementing the Individuals with Disabilities Education Action (IDEA), 20 U.S.C. Section 1400 et seq. and any amendments thereto.

Section 162.670 RSMo Cum. Sup.2002. Thus, a teacher who fails to comply with requirements of the IDEA violates a school law of the state.

■ We next address Ms. Hellmann's contention that the Board's decision violates Section 168.114.1(4) because it erroneously relies on a single Board policy that neither commands nor forbids action. Section 168.114.1(4) provides, in pertinent part that, "[a]n indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for . . . [w]illful or persistent violation of, or failure to obey, the school laws of the state or the published regulations of the board of education of the school district employing him." Cases construing Section 116.114.1(4) have established that "the statute does not allow termination on the basis of a regulation which neither forbids nor commands action" because one can neither violate nor fail to obey such a regulation. *See Carter County School District, R–1 v. Palmer*, 582 S.W.2d 347, 349 (Mo.App. S.D.1979).

In her brief, Ms. Hellmann first asserts that the Board's decision cites only to Board Policy IGBA which provides, "the district's programs and services available to meet the needs of students with disabilities will be in accordance with applicable federal and state laws governing disability discrimination and special education services including State and Local Plans for Part B of the Individuals with Disabilities Education (IDEA)." Ms. Hellmann contends, in essence that this policy is merely a descriptive recommendation, and a teacher would not be capable of disobeying it.

Given the content of Board Policy IGBA, Ms. Hellmann's assertion that the Board's decision implicates only Board Policy IGBA is inaccurate. Board Policy IGBA incorporates by reference federal and state laws governing special education services. The evidence in the record clearly establishes that the District thoroughly reviewed with Ms. Hellmann what paperwork the applicable state and federal laws required and detailed both in the notice of deficiencies and Statement of Charges in what respects Ms. Hellmann was deficient with respect to the paperwork mandated by state and federal education laws.

■ Having found that the Board's decision adequately references the school laws of the State of Missouri, our inquiry turns to whether the record supports the Board's finding that Ms. Hellmann's alleged violation of these state school laws was persistent or willful. As previously stated, Section 168.114.1(4) requires that a permanent teacher cannot be terminated absent a finding that the teacher's violation(s) were persistent or willful. *Loeffelman v. Board of Education of the Crystal City School District*, 134 S.W.3d 637, 645 (Mo.App. E.D.2004). Willfulness is defined as an act "done deliberately; not accidental or without purpose; intentional." *Id.* Notably, willfulness is seldom directly proved. *Burgess v. Ferguson Reorganized School District R–2*, 820 S.W.2d at 651, 656 (Mo.App. E.D.1991).

The linchpin in our inquiry is whether Ms. Hellmann had knowledge of the state school laws she is alleged to have violated. Review of the record and the transcript reveals agreement among the parties that Ms. Hellmann is an experienced teacher, certified in special education, a highly regulated field. Moreover, Ms. Hellmann admitted that she was aware of the policies and state laws governing special education and that Ms. Dintelman had reviewed with

her the State of Missouri's special education "Standards and Indicators." Additionally, evidence indicated that the "Rules and Regulations of the Board" were incorporated by reference as if fully set out into Ms. Hellmann's permanent teaching contract.

Accordingly, we conclude that the record supports the conclusion that despite her years of experience as a special education teacher, her knowledge of Board policy and her one-on-one review of Missouri special education policies with her supervisor, Ms. Hellmann knowingly and persistently failed to comply with the District's efforts to ensure timely and accurate completion of paperwork required by Board policy and state law. Point denied.

### Conclusion

We affirm the decision of the circuit court upholding the Board's decision to terminate Ms. Hellmann's indefinite teaching contract.

KATHIANNE KNAUP CRANE and ROBERT G. DOWD, JR., JJ., Concur.